# Richmond.

## SARAH RICKARD V. HOMER RICKARD, ET AL.

November 16, 1922.

1. WILLS—*Revocation of Will—Incorporation of One Paper in Another—Parol Evidence.*—Where the question at issue was whether a will had been revoked by a subsequent paper, where both papers involved were duly executed as wills and the simple question was whether paper No. 2 was intended by the testator to operate upon paper No. 1, and if so, with what effect, it was not necessary for one paper to be incorporated in the other by express and unequivocal language in order to render paper No. 2 admissible in evidence. Parol testimony was admissible to show the circumstances connecting the two.

2. WILLS—*Revocation of Will—Incorporation of One Paper in Another—Parol Evidence—Case at Bar.*—Where the question at issue was whether the later of two papers, both duly executed as wills, revoked in whole or in part the former, the following facts appearing in the evidence established the identity of paper No. 1 as that to which the testator referred as "this will" in paper No. 2, namely: The two were found, fastened together, in the private papers of the testator. Both were enclosed in an unsealed envelope. Search was made for other testamentary papers and none was found. As it did not appear that any other person had disturbed testator's papers the presumption is that he left them in the condition as found at his death. These facts are conclusive of the question, but there was other evidence showing its identity.

3. WILLS—*Revocation by Later Will—Revocation of Will in Whole or in Part—Question for Jury—Case at Bar.*—In the instant case, upon testator's death, two papers duly executed by him as wills and of different dates were found enclosed in an unsealed envelope. A jury was sworn to try the issue of whether the first paper was revoked in whole or in part by the subsequent paper. The jury asked the court: "Does the revocation affect the will in whole or in part!" The court replied that the later of the subsequent papers "applies to the whole will."

    *Held:* Error as the question as to the effect of paper No. 2 upon paper No. 1 should have been left to the jury.

4. WILLS—*Revocation by Another Will—Revocation in Whole or in Part—Question for Court or Jury—Case at Bar.*—In the instant case the

question at issue was whether a later paper executed as a will revoked in whole or only in part a prior paper. The second paper contained this expression: "This will and testament shall have no power whatever." This standing alone would be a clear revocation of the whole will, leaving no room for doubt as to the legal effect of the paper, and would, therefore, be exclusively a question for the determination of the court. But the subsequent portion of the paper throws some doubt upon the meaning of this language, and it is proper that the whole of paper No. 2 should be read in connection with the provisions of paper No. 1, that the provisions of both should be construed in the light of the situation of the testator and that the question of his intention should be left to the jury.

5. WILLS—*Devisavit Vel Non*—*Questions of Law and Fact.*—Upon the trial of an issue *devisavit vel non* the questions of law and fact must take the same course as in any other jury trial. Upon the trial of such an issue, the mode of proceeding is substantially the same as upon the trial of common law actions.

6. WILLS—*Devisavit Vel Non*—*Issue Out of Chancery.*—The rules which govern upon an issue out of chancery for the trial of a disputed fact to satisfy the conscience of the chancellor are very different from the rules which govern upon an issue *devisavit vel non.* The issue of *devisavit vel non* is a statutory proceeding. It is the sole *object*, not the mere *incident* of the suit. It is not intended to inform the conscience of the court, which is bound to decree according to the verdict, unless for good cause shown a new trial is granted. It is a probate jurisdiction exercised by the jury in order to the final probate of the will.

7. INTERPRETATION AND CONSTRUCTION—*Questions of Law and Fact.*—As a general rule it is the duty of the court and not of the jury to construe written instruments. Where, however, the true meaning of the terms of the instrument depends upon parol restimony as to the effect of which there may be a difference of opinion, the question is one for the jury upon proper instructions to decide.

8. WILLS—*Construction*—*Probate.*—Ordinarily, no question of the construction of a will arises in probate proceedings. The only question that can be decided in such a proceeding is whether the alleged will is the will of the testator. In other words, whether in fact and in law the paper was executed as and for the will of the testator.

9. WILLS—*Construction*—*Probate*—*Revocation of One Paper in Whole or in Part by Another Paper*—*Case at Bar.*—In the instant case the very issue submitted to the jury was whether paper No. 1 was either in whole or in part the last will of decedent, and this question depended upon whether paper No. 2 revoked the same either in whole or in part. The latter question in turn depended upon the language used by the testator construed in the light of both papers Nos. 1 and 2,

as well as the surrounding circumstances as shown by the parol
evidence.

*Held:* That the jury could not respond to this issue without passing
upon the construction of paper No. 2.

10. WILLS—*Construction*—*When for Jury.*—The construction of a will may
become a question for the jury when the doubt as to its meaning
arises from extrinsic facts not appearing upon the instrument and the
intention of the parties has to be sought for by a recurrence to the
state of facts as they existed when the instrument was made.

Appeal from a decree of the Circuit Court of Shenandoah county upon trial of a will contest. Decree for contestants of will. Proponents appeal.

*Reversed.*

The opinion states the case.

· *Philip Williams, M. L. Walton, D. O. Dechert, E. D. Newman, F. H. Brumback* and *Gilbert E. Pence,* for the appellants.

*F. S. Tavenner, J. M. Bauserman, Sr.,* and *J. M. Bauserman, Jr.,* for the appellees.

KELLY, P., delivered the opinion of the court.

M. C. Rickard died in 1921, leaving no children and survived by his widow, Sarah Rickard, and sundry collateral relatives, his heirs at law.

About a week or ten days after his death there was found in a locked drawer among his private papers, two documents pinned together, hereinafter usually designated as paper No. 1 and paper No. 2, as follows:

Paper No. 1.—"I, M. C. Rickard, of near Calvary, Shenandoah county, Va., declare this to be my last will and testament.

"(1) I give and devise to Mary E. Bowers for life and then to her four children (now living) the lot at Calvary, Va., on which is a dwelling and store house.

"(2) I give and devise to my wife, Sarah Rickard, all the residue of my estate both real and personal.

"Witness my hand and seal this 16th day of June, 1906.

"M. C. Rickard. (Seal)
"Witnesses, P. W. Magruder, M. W. Magruder."

Paper No. 2.—"January the 3, 1916.

"I, M. C. this will and testament shall have no power whatever for they have not tried to pay me and *Sarh* our money back $350 the day they bought the Peters place they *borred* this money and and *promest* I *shold* not *loose* one *sent* of it and have have refused to give anything to show for it they got it through *faulce* pretence.

"M. C. Rickard."

Paper No. 1 was typewritten except as to signatures. Paper No. 2 was wholly in the handwriting of M. C. Rickard. Each was duly executed in the manner in which wills are required to be executed. Paper No. 2 when found was pinned to the face of paper No. 1, and remained so until the beginning of the trial of this cause in the court below.

These two papers were presented to the clerk of the circuit court, who admitted them to probate "as the last will of said M. C. Rickard, deceased." Subsequently, certain of Rickard's heirs appealed to the circuit court, where, after all persons interested had been duly convened, a jury was empanelled and sworn to try an issue which was stated in the order of the court as follows:

"1st. The issue to be tried is whether the paper purporting to be the last will and testament of M. C. Rickard, deceased, and admitted to probate by the clerk of the Circuit Court of Shenandoah county, Va., in his office, on the 29th day of December, 1916, and dated June 16, 1906, or any part thereof, be the true last will and testament of said M. C. Rickard, deceased, and that said deceased possessed sufficient testamentary capacity to execute said paper purporting to be his last will and testament.

"2nd. If they find the said will was executed as stated, whether or not it or any part thereof was subsequently revoked."

Upon this issue the jury returned the following verdict: "We, the jury, find the paper writing bearing date date June 16, 1906, purporting to be the last will of M. C. Rickard, is not the last will of M. C. Rickard, but that the same was revoked." The court overruled a motion to set aside this verdict and rendered a judgment in favor of the contestants, to which this writ of error was awarded.

The due and voluntary execution of both papers above set out, and the testamentary capacity of the decedent, are conceded. The sole question presented to us upon this appeal is, did paper No. 2 operate to revoke paper No. 1, either in whole or in part?

The contestants, defendants in error, contend that by the second paper the first one was entirely revoked. The jury so found and the court rendered judgment ac-. cordingly. The plaintiff in error, Mrs. Sarah Rickard, contends on the other hand (1) that the second paper did not in any wise operate as a revocation, or (2) that at most it can in any event only be held to have revoked the specific devise to Mary E. Bowers and her children.

[1, 2] 1. The first error assigned challenges the ac-

tion of the trial court in permitting paper No. 2 to be introduced in evidence. In support of this assignment counsel for Mrs. Rickard have cited and discussed the authorities relating to what is known as "the doctrine of incorporation," the leading case on that subject being *Bryan's Appeal*, 77 Conn. 240, 58 Atl. 748, 68 L. R. A. 353, 107 Am. St. Rep. 34, 1 Ann. Cas. 393. We do not deem it necessary to deal with these authorities. Both papers here involved were duly executed as wills are required to be executed in Virginia, and the simple question now involved is whether paper No. 2 was intended by the testator to operate upon paper No. 1, and if so, with what effect. It was not necessary for one paper to be incorporated in the other by express and unequivocal language. Parol testimony was admissible to show the circumstances connecting the two. *Perkins* v. *Jones*, 84 Va. 359, 4 S. E. 833, 10 Am. St. Rep. 863; *Pollock* v. *Glassell*, 2 Gratt. (42 Va.) 440; *Gooch* v. *Gooch*, *ante* p. 21, 113 S. E. 873.

The following facts appearing in the evidence involved will establish the identity of paper No. 1 as that to which the testator refers as "this will" in paper No. 2, namely: The two were found, fastened together, in the private papers of the testator. Both were enclosed in an unsealed envelope. Search was made for other testamentary papers and none was found. There was nothing to indicate that any other person had handled or disturbed his papers before the day these two were found in the condition above described. The presumption (wholly unshaken by anything appearing to the contrary) is that he fastened the two together and left them in that condition at his death. *Wikoff's Appeal*, 15 Pa. St. 281, 53 Am. Dec. 597, 600. This concludes the question, but it is further shown that the Mary E. Bowers mentioned in paper No. 1 was the wife of William

Bowers, and that he had bought the "Peters place," and had borrowed money from the testator and his wife at the time of that purchase.    Mrs. Sarah Rickard testified that the original amount of the loan was $300.00 and that the accumulated interest amounted to $50.00. There is a conflict of evidence as to whether that money was ever repaid.    Mrs. Rickard, however, testified that she was not paid anything on that account and had never known of any payment to her husband, and that there had been trouble between them and Bowers about the matter. There can be no question that paper. No. 1 is the "will" referred to in paper No. 2; and the court was plainly right in permitting the latter to go to the jury.

2. The next assignment arises upon two instructions given for the contestants, and two asked for by the proponents but modified by the trial court before being given.    These instructions need not be set out in full because the single question in regard to them is whether the court erred in allowing the jury to consider and pass upon the effect of paper No. 2.    That there was no error in this action of the court follows from what has been said in the first assignment.    It was proper to admit the second paper in evidence, and proper, for reasons hereinafter more fully set out, to allow the jury to pass upon its effect.

[3, 4] 3. After the evidence had been concluded, the instructions given and the arguments of counsel completed, the jury retired to their room and during their deliberation sent by the sheriff the following written question to the court: "Does the revocation affect the will in whole or in part?"    To this question the court, over the objection of the proponents, returned the following written answer: "The paper of January 3, 1916, applies to the whole will."    This answer by the court to the inquiry from the jury is the subject of the third assignment of error.

In our view of the case the court erred in its reply. The question as to the effect of paper No. 2 upon paper No. 1 should have been left to the jury. That was a part of the issue which they had been sworn to try. Paper No. 2 cannot be said to be unequivocal in its terms. It is shown to have been written by a man who was rather illiterate and certainly not trained in the accurate use of language. The first expression, "this will and testament shall have no power whatever," standing alone would be a clear revocation of the whole will, would leave no room for doubt as to the legal effect of the paper, and would, therefore, be exclusively a question for the determination of the court, but the subsequent portion of the paper throws some doubt upon the meaning of this language, and it is proper that the whole of the paper should be read in connection with the provisions of paper No. 1, and that the provisions of both should be construed in the light of the situation of the testator at the time each of said papers was written, together with his relations with and his attitude towards the parties interested as shown by the parol testimony. Taking the two papers together and thus construing them, he may or may not have intended a complete revocation of the original will. He said in the outset of paper No. 2 that the will was to have no power whatever, and it may be that he meant all that this language standing alone would import, and merely intended to give his reasons in the latter part of the paper. And, in this connection, it may be plausibly argued that he was so much offended at William Bowers that he did not even want to leave his property in such condition that his wife Sarah could give her sister, Mrs. Bowers, any part thereof. On the other hand, however, it is plausible to argue that the latter part of paper No. 2 showed that he merely intended to revoke the will as to the de-

vise to Mrs. Bowers, and that he was doing this because of the failure of Bowers and his wife to repay to him and his wife the money which they had previously advanced. In this connection it is material to observe that his relations with his wife Sarah had always been cordial, that the original will showed a purpose to give the bulk of his estate to her, and that to construe paper No. 2 as a total revocation would leave her without any other provision from his estate than that which would be accorded to her as his widow, which would be much less substantial than the provision in the will.

[5, 6] We have briefly adverted to these circumstances and conditions to show that paper No. 2 must be construed as a whole in connection with paper No. 1, and in the light of the surroundings of the testator as shown by the parol evidence.    As to some of the parol evidence there was some conflict of testimony, particularly as to the relationship between Bowers and the testator.    We have not intended by anything that we have said herein to indicate our view of the true construction of paper No. 2 in its effect upon paper No. 1.    This was a question for the jury to determine.    This is not a suit for the construction of the will, but is the trial of an issue *devisavit vel non.*    The questions of law and fact, therefore, must take the same course as in any other jury trial.

In *Lamberts* v. *Cooper's Ex'r*, 29 Gratt. (70 Va.) 61, 65, Judge Staples, speaking for this court, said: "* * * the rules which govern upon an issue out of chancery for the trial of a disputed fact to satisfy the conscience of the chancellor are very different from the rules which govern upon an issue *devisavit vel non* * * * the issue of *devisavit vel non* is a statutory proceeding.    'It is the sole *object*, not the mere *incident* of the suit.'. It is not intended to inform the conscience of the court, which is bound to decree according to the verdict, unless for good

cause shown a new trial is granted. It is a probate jurisdiction exercised by the jury in order to the final probate of the will   *   *   *   . According to these principles it would seem to be clear that upon the trial of an issue *devisavit vel non*, the mode of proceeding upon the trial is substantially the same as upon the trial of common law actions." See also *Coalter's Ex'r v. Bryan and wife*, 1 Gratt. (42 Va.) 18, 85; *Malone v. Hobbs*, 1 Rob. 346, 39 Am. Dec. 263.

[7] As a general rule it is the duty of the court and not of the jury to construe written instruments. *Burk v. Lee*, 76 Va. 386, 388. Where, however, the true meaning of the terms of the instrument depends upon parol testimony as to the effect of which there may be a difference of opinion, the question is one for the jury, upon proper instructions, to decide. *Camp v. Wilson*, 97 Va. 265, 270, 33 S. E. 591; *Strause v. Richmond, etc., Co.*, 109 Va. 724, 729-730, 65 S. E. 659, 132 Am. St. Rep. 937; *Walker v. Gateway Milling Co.*, 121 Va. 217, 227, 92 S. E. 826; *Ewell v. Brock*, 120 Va. 475, 478, 91 S. E. 761; *Warner v. Miltenberger*, 21 Md. 264, 83 Am. Dec. 573.

[8-10] Ordinarily no question of construction of a will arises in probate proceedings. Undoubtedly the only question that can be decided in such a proceeding as this is "whether the alleged will, or any part thereof, is the will of the testator; in other words, whether in fact and in law the paper was executed as and for the will of the testator. After that function is performed, the court can go no further." *Ward v. Brown*, 53 W. Va. 227, 332, 44 S. R. 488, 490. Here, however, the very issue submitted to the jury was whether paper No. 1 was, either in whole or in part, the last will and testament of M. C. Rickard, and this question depended upon whether paper No. 2 revoked the same either in whole or in part. This latter question in turn depended upon

the meaning of the language used by the testator construed in the light of that paper itself and the paper to which it was attached, as well as the surrounding circumstances as shown by the parol evidence.  The jury could not respond to the issue which it was sworn to try without passing upon the construction of paper No. 2. The case falls within that exceptional class of cases in which, as said in 28 R. C. L. p. 405, sec. 417, "the construction of a will may become a question for the jury when the doubt as to its meaning arises from extrinsic facts not appearing upon the instrument and the intention of the parties has to be sought for by a recurrence to the state of facts as they existed when the instrument was made."  See *Lorieux* v. *Keller,* 5 Iowa 196, 68 Am. Dec. 696, 701.

There is a sense in which the reply of the trial court to the inquiry from the jury was correct.  "The paper of January 3, 1916, applies to the whole will" whether it revokes the same in whole or in part, and the two can not be disassociated; but the court's unqualified reply tended to lead the jury to believe, in view of the form of their question, that the paper had to be regarded by them either as having no effect whatever on the will or as operating thereon as a total revocation.  They should have been informed that it was their province to determine whether paper No. 2 revoked the will *in toto* or only in part.  The court could very properly have told the jury that under the issue submitted to them they could find that the second paper operated either as a total revocation or merely as a revocation of the devise to Mrs. Bowers.  There could have been no middle ground and no other possible effect, and, therefore, it would perhaps have been helpful to the jury, and would not have been in any way an invasion of their province, if the court had been thus specific in replying to their inquiry.

For the reasons stated, the judgment complained of will be reversed and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.   What has been said herein will be sufficient to indicate the instructions which we think ought to be given on another trial.

*Reversed.*