ISAAC KEYSER et al. *v.* WILLIAM WEINTRAUB ET AL.

[No. 23, April Term, 1929.]

438

*Decided May 24th, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edwin T. Dickerson* and *Solomon Hirschhorn,* for the appellants.

*Ben Weintraub,* submitting on brief, for William and Rose Weintraub, appellees.

*Louis Samuels,* for Samuel H. and Annie Caplan, appellees.

*Howard L. Aaron* and *Samuel J. Aaron,* submitting on brief, for Sam and Bessie Gruber, appellees.

DIGGES, J., delivered the opinion of the Court.

The appellants brought suit in the Superior Court of Baltimore City on a written agreement under which they claim indemnity from eight of the signers of said agreement, the appellants having also signed this agreement. Judgment by default for want of a plea was entered against the defendants Abraham Kemper and Jennie Kemper, and thereafter the case proceeded to trial against the remaining defendants, resulting in a verdict and judgment for the said defendants. From such judgment the appeal here is prosecuted. The agreement upon which the claim of the appellants is based is as follows:

"Baltimore, Md., September 24th, 1923.

"We, the undersigned, for and in consideration of the sum of one dollar, and for other good and valuable considerations, the receipt of all of which is hereby acknowledged, do hereby agree that we will indemnify and reimburse, according to the conditions hereinafter stated, Isaac Keyser and Harry Sachs, who have united in a certain mortgage executed by them, together with Isaac Herman and wife for $6,032.00, to the David Reus Permanent Loan and Savings Co. of Baltimore City on properties Nos. 619 and 621 N. Mount Street, Baltimore City, Maryland, namely:

"1. If the said Isaac Keyser and Harry Sachs, or either of them, shall suffer a loss by virtue of having entered into the said mortgage, then, and in that event, we agree to indemnify and reimburse them or him in an amount proportioned according to the number of persons signing this agreement, inclusive of the said Keyser and Sachs, to the end and intent

that the said loss shall be borne equally by all of the parties entering into these presents.

"2. If any of the parties entering into these presents be insolvent, or shall not be financially able to pay his or her share, then the loss shall be divided equally among such of said parties hereto as are solvent and financially able to pay.

"3. The obligation of the parties hereto shall be in like manner as if they were mortgagors entering into the execution of the said mortgage.

"Witness the hands and seals of the parties hereto."

The mortgage referred to in this agreement was signed by Isaac Herman and Helen Herman his wife, together with Sachs and Keyser, the appellants. It was given to the David Reus Permanent Loan & Savings Company of Baltimore City in the amount of $6,032, and conveyed by way of mortgage three lots or parcels of ground lying in Baltimore City, each improved by a dwelling house, and known as Nos. 619 and 621 North Mount Street and 1009 West Saratoga Street respectively. Each of these parcels of ground is separately described by metes and bounds in separate paragraphs in the mortgage. Immediately following the description, the mortgage says: "And all of the parties who unite in the execution of this mortgage do hereby covenant and agree to pay the said mortgage debt and perform all the covenants herein contained as original mortgagors and not as sureties." The mortgage contained a consent for the passage of a decree for the sale of the property after default in any of the conditions shall have continued for eight weeks, under the provisions of sections 720 to 732, inclusive, of chapter 123 of the Acts of 1898, being the statutes applicable to foreclosures under a consent decree in Baltimore City. The date of the mortgage was September 24th, 1923, the same as that of the agreement, and the evidence shows that the two instruments were executed on that day, and practically simultaneously. Default having occurred under the terms of the mortgage, a decree for foreclosure was passed and the property sold on or about October 5th, 1926. The property did not sell for

enough to satisfy the mortgage debt, interest, and costs, the deficiency, as shown by the auditor's report, which was finally ratified on December 13th, 1926, being $1,986.50; whereupon a deficiency decree was entered against the mortgagors, Herman and wife, and Sachs and Keyser, for the sum of $2,005.08, being the amount of the deficiency as shown by the auditor's report, with interest to the date of the deficiency decree.

The facts, as disclosed by the record, which led up to and culminated in the execution of the mortgage and the indemnity agreement, are substantially these: It appears that one King, prior to September, 1923, was the owner of the Mount Street property, and agreed with the appellants to sell that property for a certain amount; and this contract was subsequently transferred to various parties, until finally the property was sold to Herman and wife and a deed executed by King conveying it to them; that each one of the parties through whom the contract passed sold it for varying amounts over and above what they had paid for it, none of them, however, having received in cash their profits, which were to be accounted for and distributed upon the consummation of the sale to Herman; that the appellants, at the time they disposed of the contract, represented that a loan to the purchaser would be secured by a mortgage on the property to the amount of $6,000; that each holder thereafter of the contract made a similar representation to his successor; that none of the holders of the contract intended to become *bona fide* purchasers of the property, but bought the contract for the purpose of reselling at a profit; that when Herman and wife finally purchased the property for the sum of $7,400, it became necessary for the appellants to make good their promise to obtain a loan on the property secured by a mortgage of about $6,000; that they applied to the building association for a loan of that amount, which was granted on the security of a mortgage on the Mount Street property, and, in addition thereto, on the Saratoga Street property, which was the individual property of the appellant Sachs. There is a sharp conflict in the testimony as to why the Saratoga

Street property was included in the mortgage, the appellants testifying that it was in compliance with a demand made by the building association for additional security; and to the same effect is the testimony of Mr. Albrecht, the attorney for the association, who prepared the mortgage and the agreement of indemnity; while the defendants' testimony is that they were induced to sign the agreement of indemnity by reason of the representation made to them by the appellants that the Saratoga Street property, in addition to the Mount Street property, which were both included in the mortgage, would in all likelihood be sufficient to satisfy the mortgage upon foreclosure, and that signing the indemnity agreement, by which all of the parties thereto were to share equally any loss sustained by the appellants by reason of a deficiency growing out of a foreclosure, would subject them to slight or no liability; that at first it was the intention and purpose of all of the parties to the indemnity agreement to sign the mortgage, but because of the large number of parties it was deemed advisable that only the appellants sign the mortgage, together with Herman and wife, and that the indemnity agreement be signed as a substitute for the signing of the mortgage, it being expressly provided in the indemnity agreement that "the obligation of the parties hereto shall be in like manner as if they were mortgagors entering into the execution of the said mortgage." It further appears that, between the date of the decree of foreclosure and the sale, the mortgagee, upon application of Sachs, one of the appellants and the owner of the Saratoga Street property, released this property from the operation of the mortgage, without the knowledge or consent of the appellees; that, therefore, at the time of the sale, only the Mount Street property was covered by the mortgage, and the proceeds from the sale of that property, when applied to the mortgage debt, left a deficiency of $2,005.08, which the appellants had paid, and eight-tenths of which they now claim as reimbursement or indemnity from the appellees; that the profit made by the respective holders of the contract for the Mount Street property varies in amount from about $700 to

$15, the largest profit having been made by the appellants, and being about $500 more than that made by any of the other holders of the contract.

The only exception in the record is to the court's action on the prayers, being to the rejection of the appellants' first prayer and the granting of the appellees' fourth and fifth prayers. The single question presented by these rulings is whether or not the jury was bound to consider the value of the Saratoga Street property, which had been withdrawn from the mortgage before the foreclosure, in determining whether there had been any loss suffered by the appellants, for which those signing the indemnity agreement would be responsible, and if so, what amount. The appellees' fifth prayer, which was granted, is: "The court instructs the jury that if they find from the evidence that the defendants agreed in writing to indemnify and reimburse the plaintiffs in the event that the plaintiffs sustained a loss as a result of signing the mortgage to the David Reus Building Association offered in evidence dated the 24th day of September, 1923, then before the jury can find in favor of the plaintiffs, the jury must find that all of the properties mentioned in the mortgage to the David Reus Building Association have been sold or otherwise accounted for in any sum if they remain due and unpaid by virtue of said agreement." While this prayer is by no means clear, and might well be misleading and confusing to the jury, we are of the opinion that its purpose and effect was to tell the jury that, before they could find in favor of the plaintiffs, they must find that the Saratoga Street property mentioned in the mortgage, as well as the Mount Street property, had been sold or their value otherwise accounted for, as a credit on the mortgage, in determining whether there had been any loss suffered by the appellants for which they could compel reimbursement by the appellees; or in other words, the jury were told that the defendants were entitled to have the value of the Saratoga Street property consumed in the settlement of the Herman mortgage before they could be called upon to indemnify the plaintiffs for any loss. By granting this instruction, the

court held as a matter of law that the appellees were entitled to have the value of. the Saratoga Street property applied to the mortgage in determining whether or not the appellants had suffered any loss by having signed the mortgage. This, we think, was error.

It is true that ordinarily the interpretation or construction of a written instrument is for the court, but, when the written instrument on its face is so ambiguous as to necessitate the production of evidence outside of the instrument in order to determine the true intention and real contract between the parties, and where this evidence is conflicting, it presents a mixed question of law and fact, and should be submitted to the jury for their determination, under proper instructions by the court. In 23 *Am. & Eng. Enc. Law,* 555, the rule is thus stated: "When the legal operation and effect of a written instrument depend not only upon the meaning and construction of the words used therein, but upon collateral facts *in pais* and extrinsic evidence, the inference of fact to be drawn from the evidence should be submitted to the jury where such parol evidence is conflicting or different inferences may be drawn from the collateral facts; but it has been declared that even when extraneous evidence is admitted to aid in the construction of a writing and to show the circumstances under which it is made, it is the province and duty of the court to direct the effect of such evidence and to instruct the jury what shall be the construction if certain facts are proved."

In *Geohegan v. Arbuckle Bros.,* 139 Va. 92, 36 A. L. R. 399, it was said: "Where a written contract is clear and unambiguous on its face, it is the duty of the court to construe it, whether the contract be contained in a single document or evidenced by several papers. Where the contract is not clear and unambiguous on its face, but is rendered so by extraneous evidence which has been properly admitted, so that nothing remains to be done except to construe the contract in the light of such extraneous evidence, it is equally the duty of the court and not of the jury, to construe it. * * * But where the language of the contract is not clear and unambiguous, and resort to extrinsic evidence is necessary,

if the situation is such that fair-minded men might reasonably draw different conclusions therefrom, then the construction of the contract is for the jury, under proper instructions from the court, even though the evidence be not conflicting. *Sioux City & P. R. Co. v. Stout,* 17 Wall. 657, 664, 21 L. Ed. 745, 749; 23 *Am. & Eng. Enc. Law,* 2d. ed., 565. The rule is well stated by Judge Kelly in *Rickard v. Rickard,* 134 Va. 485, 494, 115 S. E. 369, citing numerous cases, as follows: 'As a general rule, it is the duty of the court and not of the jury to construe written instruments. *Burke v. Lee,* 76 Va. 386, 388. Where, however, the true meaning of the terms of the instrument depends upon parol testimony as to the effect of which there may be a difference of opinion, the question is one for the jury, upon proper instructions, to decide' "—citing as authority for this proposition, among others, *Warner v. Millenberger,* 21 Md. 264.

In that case our predecessors quoted with approval the language of the Connecticut court in *Wooster v. Butler,* 13 Conn. 309: "That the construction of written documents is a matter of law, and is not in ordinary cases to be submitted to the jury, as a mater of fact, is true; but where the doubt is produced by the existence of collateral and extrinsic facts, not appearing upon the instrument, its construction ceases to be a matter of mere legal construction, and the intention of the parties is to be sought for, by a recurrence to the state of facts as they existed when the instrument was made, and to which the parties are presumed to have reference. The ambiguity, in such case, is a latent one, which may be explained by parol evidence and submitted to the jury."

In the case of *Waldrep v. Exchange State Bank,* 81 Okla. 162, 14 A. L. R. 747, 751, it was said: "We deem the intention of the parties in the transaction in this case to be a question for the jury to determine. It might be said, and in fact is intimated in the brief of the attorney for the defendant in error, that, since the mortgage and authority to sell and the contract of delivery of possession of the property were in writing, the case rests upon an interpretation of said contracts, and is hence for the court. This is probably true

if the entire question were the interpretation of an expressed contract in writing, but under the state of this record the issue puts in question the good faith of the transaction, the charge being that the written expression of the contract does not express the true intention of the parties, and was only employed to hide the real purpose, a sale in fraud of creditors. Under this state of the record the proof of the real transaction does not lie entirely in the writing, but in parol proofs as well."

In *Thompson on Trials,* vol. 2, sec. 1333, the author says: "The intent is always a question for the jury, except where it is to be gathered from the terms of an unambiguous writing, and then, upon the principles already explained, it is a mere matter of interpretation to be performed by the court. * * * Even where the intent with which an agreement was made or an act was done is to be gathered in part from a writing, and in part from an oral speech or extrinsic circumstance, the well-expressed conclusion is: 'When the intention of the writer is to be judged of by the writing, it is a question for the court. But when the meaning is to be judged of by extrinsic facts, or when the writing forms part of the transaction, the rest of which consists of words spoken or acts done; or when, whatever its meaning, it is but a circumstance tending to establish some other fact, it is for the jury to say whether the language was used in the sense imputed, or what is the character of the entire transaction of which the writing forms a part, or what is the truth of the ultimate fact which it tends to prove. In these cases the writing must go to the jury to be considered with the other evidence.' "

The record now under consideration discloses an agreement or contract between the parties evidenced by two written instruments, the agreement to indemnify or reimburse, and the mortgage. The language of these instruments, when taken singly or considered in conjunction, is ambiguous, and in order that the court be not excluded from any light which the parties had at the time of the inception of the contract, it is necessary that extrinsic evidence be resorted to, to explain and elucidate the written instruments. Such evidence

was admitted, and we think properly so. This evidence was, as stated, in sharp conflict. If the jury believed some of the witnesses, one could with entire logic reach the conclusion that the intention of the parties to the agreement of indemnity was to reimburse the appellants for any loss suffered by them after the Mount Street property alone had been applied to the mortgage; while if the testimony of other witnesses was decided to be true, then with equal logic it could be determined that the indemnitors were not to be liable to the appellants until the value of the Saratoga Street property, in addition to the Mount Street property, had been appropriated to the Herman mortgage. There can be no question that the appellees agreed to indemnify the appellants for a loss, if any, sustained by them. The question is, what is meant by the word "loss"? Does it mean such loss as the appellants sustained upon the appropriation to the Herman mortgage of the Mount Street property alone? Or does it mean such loss as they sustained after appropriating both the Mount Street and Saratoga Street properties to the payment of the Herman mortgage? The answer to this question cannot be justly determined without resort to extrinsic evidence, and, when such resort is had, we find the evidence in direct conflict; and under such circumstances the case is one of fact, the real truth, as to fact, to be determined by the jury, under instructions from the court, in the alternative, depending upon their finding of fact. It follows that there was error in granting the defendant's fifth prayer, for which error the judgment must be reversed.

*Judgment reversed, and a new trial awarded. with costs to the appellants.*