IRVING TRUST COMPANY, TRUSTEE, *v.* WILLIAMS,
INCORPORATED
[No. 14, April Term, 1935.]

*Decided May 3rd, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Solomon Hirschhorn*, with whom was *Louis J. Sagner* on the brief, for the appellant.

*H. Harry Rosenberg*, with whom was *Irving C. Goldstein* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The decree under review on this appeal declared a chattel mortgage to have been discharged, and restrained its enforcement by the trustee in bankruptcy of the corporate mortgagee. That relief was invoked in a petition of Williams, Inc., the mortgagor, which alleged that it is a Maryland corporation conducting a barber shop business in Baltimore City on the first floor of the premises known as 209 East Baltimore Street: that on February 1st, 1929, the United Cigar Stores Company, lessee of the property, entered into a written agreement with Anthony Williams, which he subsequently assigned to the petitioner, creating a sublease of the premises for a term beginning March 1st, 1929, and ending April 29th, 1935; that the sublease include a provision for the deposit of $2,000 to be applied as a credit for the last months' rent so far as applicable; that, during the petitioner's occupancy under the sublease, the United Cigar Stores Company distrained the chattels on the premises for rent in arrears for the months of February and March, 1932, amounting to $916.68, which action resulted in a settlement upon terms stated in a memorandum exhibited with the petition; that pursuant to the settlement a new agreement was executed for the sublease of the store floor and basement of 209 East Baltimore Street to the petitioner and others for a term beginning on April 1st, 1932, and ending on April 29th, 1935, at the annual rental of $3,600; that a "Rider" attached to the new agreement provided for a chattel mortgage of the petitioner's furniture, fixtures, and equipment securing the

payment of $1,800, at the rate of $50 per month, as a special consideration for the sublease, in addition to the stipulated rent, and conditioned for the performance of the sublessees' covenants pending the payment in full of the mortgage debt; that the petitioner and others accordingly, on April 25th, 1932, executed the chattel mortgage to the discharge of which the petition is directed; that the petitioner paid to the United Cigar Stores Company the sum of $350 per month, from April 1st, 1932, until notice was received, on or about September 1st, 1932, from the Mercantile Trust Company of Baltimore, that all of the rent accruing after August 29th, 1932, should be paid to it, the ownership of the property being in the trust company and Harry Lee Zeigler as trustees, and the United Cigar Stores Company having been adjudicated a bankrupt in the United States District Court for the Southern District of New York on August 29th, 1932, and under the provisions of the lease from the trustee owners to the United Cigar Stores Company, the bankruptcy adjudication having terminated the lease and any authority which that company previously had to collect the rent for the building; that the termination of the main lease similarly affected the sublease, and the petitioner was therefore compelled to enter into a new lease with the owners of the property and to discontinue rental payments under the pre-existing sub-lease agreement; that the petitioner has demanded, but has been refused, a release of the chattel mortgage, which is claimed to be no longer effective in view of the termination of the sublease with reference to which it was executed.

The memorandum of settlement and the "rider" to the new sublease, exhibited with the petition, have such an important relation to the question presented for decision that it seems necessary to quote their provisions in full. The first of those agreements was in the following form:

"This memorandum of settlement made this 31st day of March, 1932, by and between United Cigar Stores Company of America, a body corporate, Wil-

liams, Incorporated, a body corporate, Anthony Williams and John M. J. Sweeney and Linda M. Sweeney, his wife.

"Whereas the said United Cigar Stores Company of America, a body corporate, is the lessor of the premises known as No. 209 East Baltimore Street, Baltimore, Maryland; and

"Whereas the said United Cigar Stores Company, on or about February 1, 1929, entered into a written agreement of lease of said premises with the said Anthony Williams; and

"Whereas the said Anthony Williams is in arrears in the monthly installments of rent called for by said lease for the months of February and March, 1932, at $458.34 per month, or $916.68, and in addition thereto the said Anthony Williams owes to the United Cigar Stores Company an amount payable under said lease for 1931 city and state taxes on said property and water rent, amounting to $850.28; and

"Whereas the said United Cigar Stores Company has issued a distraint out of the People's Court for the rent for the months of February and March aforesaid, and has seized the goods and chattels found upon the said premises; and

"Whereas the said Williams Incorporated, a body corporate, conducts the business at said premises and the said Sweeney is an officer of said corporation and financially interested in the said business, and the said Linda M. Sweeney holds a chattel mortgage, in the amount of $5,000, on the chattels seized by the United Cigar Stores Company under the aforesaid distraint proceeding, the effect of which distraint proceeding is to create a lien in favor of United Cigar Stores Company, which has priority over the lien of the chattel mortgage to the said Linda M. Sweeney; and

"Whereas the parties hereto, in consideration of the premises and the mutual covenants, promises

and agreements by, to and with each other, have agreed to a settlement of the aforementioned matter upon the following terms, agreements and conditions:

"1. That the said United Cigar Stores Company, Williams, Inc., Anthony Williams, Sweeney and Linda M. Sweeney will enter into a written agreement of lease to be prepared by the said United Cigar Stores Company in which the said United Cigar Stores Company shall be the lessor and the other parties hereto shall be either lessees or guarantors, at the option of the said lessor, for the rental of the first floor and basement of the aforesaid premises, for the term from April 1, 1932 to April 29, 1935, at and for the sum of Three Hundred ($300) Dollars per month, payable on the first day of each month in advance. The said lease shall be in the same form as that now existing between the said United Cigar Stores Company and the said Anthony Williams, and subject to the same conditions, except as herein provided for. That under the terms of the said lease to be executed the taxes and water rent beginning with the year 1932 shall be paid by the lessor.

"2. That the said Linda M. Sweeney shall execute either a release or a waiver of priority, at the option of said United Cigar Stores Company, of the chattel mortgage from Williams, Incorporated, to Linda M. Sweeney, dated March 18, 1931, and recorded among the Chattel Records of Baltimore City in Liber S. C. L. No. 411, folio 376.

"3. That there is now due and owing to the said United Cigar Stores the aforesaid rent, taxes and water rent due under the lease with the said Anthony Williams, amounting to approximately $1,800. That there shall be paid by the said Williams, Incorporated, Anthony Williams, Sweeney and Linda M. Sweeney the sum of fifty dollars ($50) per month during the continuance of the term of the

lease to be executed, as mentioned in paragraph one, in liquidation of said indebtedness; that a chattel mortgage on all of the goods and chattels now on the aforesaid premises shall be given to the United Cigar Stores Company by the other parties hereto either as mortgagors or guarantors, at the option of the said United Cigar Stores Company, in the amount of $1,800 to secure the payment of said indebtedness. The mortgagors or guarantors, as the case may be, shall have the right and privilege at any time of prepaying the aforesaid sum of $1,800 and, upon doing so, shall demand and obtain a release of said chattel mortgage from the United Cigar Stores Company. Said chattel mortgage shall be prepared by the United Cigar Stores Company and shall be in the form customarily used in Baltimore City.

"4. That the said Anthony Williams shall assign to the United Cigar Stores Company all of his right, title and interest in and to a certain sub-lease, dated from Anthony Williams to K. Katz & Sons, Incorporated, of the upper floors of the premises at 209 East Baltimore Street, and that thereafter the said United Cigar Stores Company shall collect all rental due under said sub-lease.

"5. That the said United Cigar Stores Company shall dismiss the distraint proceeding instituted by it against said Anthony Williams, and that the costs thereof which amount to approximately $190, shall be paid by the said United Cigars Stores Company, except the $50 heretofore paid on account of these costs by Williams, Incorporated.

"6. That upon the execution of the aforegoing papers and not until then, the United Cigar Stores Company shall cancel and terminate the aforesaid lease between it and Anthony Williams, dated February 1, 1929; that the stipulation contained in said lease with respect to the deposit of $2,000 shall not be contained in the new lease to be executed by the

parties hereto and any and all claim and right to the said deposit, or as a credit on the rent under the terms of the deposit agreement, is hereby waived by the said Anthony Williams and the said United Cigar Stores Company is released from any right or claim on the part of the said Anthony Williams to the said deposit."

The "Rider" appended to the sublease of April 14th, 1932, was as follows:

"In addition to the foregoing annual rent herein provided to be paid by the Tenant, the Tenant covenants and agrees to pay to the Landlord as a special consideration for the execution of this lease on the part of the landlord the sum of Eighteen Hundred ($1,800.00) Dollars, to be paid in monthly installments of Fifty ($50.00) Dollars in advance on the first day of each and every month, the first payment to be made upon the execution hereof and on the first day of each month hereafter during the term until the full sum of Eighteen Hundred ($1,800.00) Dollars is paid. As security for the payment of the rent and the said sum of Eighteen Hundred Dollars, the Tenant does simultaneously herewith execute and deliver to the landlord a chattel mortgage covering all of the Tenant's furniture, fixtures and equipment in the demised premises, which chattel mortgage shall be in the sum of Eighteen Hundred Dollars and shall be conditioned upon the full and faithful performance by the Tenant of all of the terms, covenants and conditions of this lease on the part of the tenant to be performed, until the aforesaid sum of Eighteen hundred dollars has been fully re-paid to the landlord by the Tenant, in which event the Landlord agrees to execute and deliver to the Tenant a satisfaction of said chattel mortgage. It is agreed by the Landlord that the Tenant shall have the right to prepay the said sum of Eighteen Hundred Dollars or so much thereof as remains due and payable, at any time during the

term, upon giving to landlord at least ten days' written notice thereof, but the tenant shall not be entitled to receive a satisfaction of said chattel mortgage at the time of such prepayment unless at the time of the demand for such satisfaction of mortgage the Tenant shall have paid its rent in full up to the time of such demand, and otherwise performed the terms, covenants and conditions of this lease."

From the chattel mortgage, to which the memorandum of settlement and the "Rider" both referred, the following clauses are quoted:

"Whereas the said Williams, Inc., hereinafter called Mortgagor, is indebted to the said United Cigar Stores Company of America, hereinafter called Mortgagee, in the full and just sum of Eighteen Hundred ($1,800) Dollars, which said indebtedness is payable by the said Mortgagor to the said Mortgagee in installment of $50.00 per month, payable in advance on the first day of each and every month until entire indebtedness of $1,800.00 is fully paid; and

"Whereas the said Mortgagor, contemporaneously with the execution of this mortgage, executed as lessee together with Anthony Williams, John M. J. Sweeney and Linda M. Sweeney, a lease from the said Mortgagee of certain premises located at 209 East Baltimore Street, Baltimore, Maryland, and the said Anthony Williams, John M. J. Sweeney and Linda M. Sweeney expressly agree to be bound by the terms of this said mortgage, and guarantee the payment of the indebtedness secured hereby; and

"Whereas to better secure the payment of said indebtedness and to secure the faithful performance by the said Mortgagee and the other lessees of the covenants and conditions of the aforementioned lease, these presents are executed:

"Witnesseth:

"That for and in consideration of the premises and the sum of Five ($5.00) Dollars paid by the said Mortgagee to the said Mortgagor, the receipt of which is hereby acknowledged, the said Williams, Inc., does hereby bargain and sell unto United Cigar Stores Company of America the following described property and all attachments and appurtenances, used by the said Mortgagor in the Barber business conducted by it on the first floor of 209 East Baltimore Street, Baltimore, Maryland: * * *

"Provided, however, that if the said Mortgagor shall pay the said Mortgagee said sum of $1,800.00 as and when each of the aforesaid installments, shall become due and payable, then these presents shall be void. It is expressly agreed between the parties hereto that the said Mortgagee shall have the right to prepay said sum of $1,800.00 or so much thereof as remains due and payable at any installment date upon giving to said Mortgagee at least ten days written notice thereof, but the said Mortgagee shall not be entitled to receive a release or satisfaction of this said mortgage at the time of such prepayment unless the said lessees shall have paid the rent called for by the aforementioned lease in full up to the time of said prepayment, and otherwise performed the terms, covenants and conditions of the aforementioned lease."

The provisions in the original sublease for a deposit of $2,000 were definitely waived in the memorandum of settlement, and therefore need not be here reproduced.

The trustee in bankruptcy of the United Cigar Stores Company, in answering the petition, denied that the chattel mortgage executed by the corporate petitioner was discharged by the termination of the sublease under which it occupied the demised premises, and asserted that the indebtedness secured by the mortgage existed independently of the sublease and prior to its execution.

The testimony in the case was concerned with the question whether the $1,800 mentioned in the chattel mortgage was intended by the parties to represent the indebtedness, approximating that amount, previously incurred and unpaid, or was understood to be the aggregate of payments in the nature of additional rent thereafter accruing. There were no exceptions to the admitted parol evidence on the subject, and it is therefore unnecessary to decide whether that evidence was admissible because of any ambiguity in the terms of the written agreements under consideration. *Laporte Corporation v. Pennsylvania-Dixie Cement Corporation*, 164 Md. 642, 165 A. 195, 168 A. 844; *Keyser v. Weintraub*, 157 Md. 437, 146 A. 275.

It was testified by a witness for the petitioner that the $2,000 deposit mentioned in the first of the subleases was agreed to be applied, so far as requisite, to the satisfaction of the accrued liability for rent and taxes. But testimony to the contrary was produced for the respondent. It seems reasonably certain from the record that no such deposit was actually made, and the waiver reference to it in the memorandum of settlement is inconsistent with the theory that there was an agreement for its application to the unpaid claim for rent and taxes. The attorney who conducted the settlement and sublease negotiations for the United Cigar Stores Company testified that, according to their understanding, the $1,800 mentioned in the chattel mortgage represented the approximate amount of the matured rent and the unpaid taxes for which the sublessee was then liable. The exact total of those items of indebtedness was $1,776.96, as stated in the settlement memorandum. The first payment made on account of the new sublease and chattel mortgage was reduced by a credit of $23.04 to cover the difference between the amount of the prior rent and tax claim, and the sum of $1,800 mentioned in the mortgage. That is a fact of importance as tending to refute the contention that the consideration for the chattel mortgage had reference only to payments for the future use

of the leased property, and that the past due indebtedness was waived and extinguished. The settlement memorandum is distinctly opposed to such a theory. It provides expressly that the chattel mortgage to be executed pursuant to its terms should secure the payment of the existing rent and tax claim of approximately $1,800, at the rate of $50 per month during the period of the new three year sublease, under which a rental of $300 per month was to be independently payable. The chattel mortgage is entirely consistent with those provisions. It recites a subsisting indebtedness of the mortgagor to the mortgagee in the sum of $1,800, provides for its payment at the rate of $50 monthly, and authorizes the mortgagor to pay the debt in full on any installment date. The stated purpose of the mortgage was to secure the payment of the specified indebtedness and also the faithful performance of the covenants in the contemporaneous sublease between the same parties. It was provided that prepayment of the mortgage debt in full should not entitle the mortgagor to a release of the mortgage unless the sublease rental and other covenants on the part of the sublessee had been performed. The sublease and the attached "Rider" make a distinction between the stipulated annual rent of $3,600, payable in equal monthly installments, and the sum secured by the chattel mortgage. The "Rider" refers to the agreement to pay that amount as a special consideration for the execution of the sublease, in addition to the annual rent for which the sublease provides. It also refers to the chattel mortgage provision that the mortgage debt could be prepaid, and that its release could not then be required unless the covenants of the lease had been fulfilled. The "special consideration" mentioned in the "Rider" had reference to the same indebtedness which the memorandum of settlement specified. The petition itself alleges that the sublease, of which the "Rider" formed a part, was entered into pursuant to that memorandum. There is no dispute as to the amount, validity, and non-payment of the indebtedness therein particular-

ized, and clearly the enforcement of that liability was not dependent upon the execution of a new sublease. The terms of the "Rider," when construed with due regard to the written agreement which provided for the sublease and the chattel mortgage, did not, in our opinion, have the effect of changing the $1,800 antecedent debt into a future obligation depending wholly for its enforceability upon the continuance of the tenancy. The dual provisions of the chattel mortgage, for securing the previously incurred debt, and the performance of the sublease covenants, are not essentially interdependent, but are severable, and therefore the termination of the tenancy, because of the bankruptcy of the lessor, left the mortgage unimpaired so far as its purpose to secure the prior indebtedness is concerned. *Broumel v. Rayner,* 68 Md. 47, 11 A. 833; *Nicholson v. Ellis,* 110 Md. 322, 73 A. 17; 13 *C. J.* 568.

*Decree reversed, with costs.*