MONTAUK CORPORATION *v.* SEEDS ET AL.

[No. 112, September Term, 1957.]

492

494

*Decided February 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*David I. Abse* and *N. L. Silberberg* for the appellant.

*Arthur J. Hilland* for Carl B. Seeds.

Submitted on brief by *John B. Kenkel* and *B. Houston Mc-Ceney* for Washington Suburban Sanitary Commission.

PRESCOTT, J., delivered the opinion of the Court.

The appellee, Carl B. Seeds (Seeds), sued the appellant, Montauk Corporation (Montauk), in the Circuit Court for Montgomery County for damages for the breach of a contract. Montauk joined the other appellee, Washington Suburban Sanitary Commission (Commission), as a third-party defendant. The case was tried by a judge with a jury, and resulted in a verdict in favor of the appellee, Seeds, against the appellant, Montauk; and a verdict in favor of the Commission, the third-party defendant. Judgment was entered on the verdict in favor of Seeds against Montauk, but no judg-

ment was entered on the verdict in favor of the Commission. From the judgment in favor of Seeds against Montauk, Montauk has appealed.

Seeds owns and operates a drain cleaning and pumping service business in Washington, D. C., and the surrounding territory. He performs such work on either a job or contract basis. Montauk was building a subdivision of houses, known as Georgetown Village, in the Bethesda area, and Arnold L. Perry (Perry) was its president. In order to provide sewer service for the houses it built and sold in Georgetown Village, Montauk had to build a sewage pumping station on one of its lots. As it was necessary to connect this with the general sewage system in the area, the plans and specifications therefor had to be submitted to the Commission and its approval obtained; and, thereafter, the construction, maintenance and operation of the pumping station, by statute, (1 Mtg. Cty. Code (1955) sec. 74-55), would be under the supervision and general control of the Commission. The Commission was also empowered, whenever it deemed it expedient, to take over any privately owned sewage system in the area either by purchase or condemnation.

Early in the year 1954, Perry asked Seeds to submit a proposal for service on the pumping station on an annual basis, for a period of five years. Negotiations followed that request, and two written proposals were submitted by Seeds to Montauk which were not accepted. On April 13, 1954, Montauk, through Perry, accepted Seeds' third written proposal to do the required work, which was specified in the proposal, for $2,160 per year, for a period of five years, payable in monthly instalments, to commence upon the completion of the pumping station and the occupancy of the first group of houses. His proposal contained no provision that made it subject to the approval of the Commission, or to change or cancellation because of any subsequent action of the Commission.

This third proposal, with its acceptance by Montauk, was delivered to Montauk's attorney, who forwarded it to the Commission. An executed duplicate original thereof was offered by Seeds at the trial as his exhibit No. 1. Seeds'

ability to perform the services and his business integrity had been approved by the Commission; but, without ratifying the third proposal of Seeds, which had been accepted by Montauk, the Commission decided to undertake the operation of the pumping station itself. Whereupon, after further negotiations, it executed a contract with Montauk which was quite favorable to Montauk from a monetary standpoint. In substance, the Commission agreed to take over the permanent operation of the pumping station upon the payment by Montauk to the Commission of the same amount of money that Montauk had agreed to pay Seeds to operate it for five years. Montauk did not notify Seeds of this contract with the Commission. Seeds was at all times ready, willing and able to perform his contract with Montauk.

## I

The appellant's principal contention is that the contract was subject to an implied [1] condition precedent that it had to be approved by the Commission, and, as the Commission never approved the same, neither party to the contract was bound to perform. It argues that the law is well established that conditions upon which the right to require performance of a contractual obligation depends may be implied, where not to do so would defeat the clear intention of the parties and the object of the contract.

The contract was in writing and extraneous evidence of the surrounding circumstances was admitted, without objection. It is therefore unnecessary to decide whether that evidence was admissible because of any ambiguity in the terms of the written instrument under consideration. *Irving Trust Co. v. Williams, Inc.,* 168 Md. 588, 597, 178 A. 848. At the trial below, the question of the intention of the parties as to whether the contract was conditional or unconditional was presented to the jury, and its decision was against the appellant. There is no doubt that as a general rule the construction of a written instrument is a duty of the court. However, this general rule is subject to certain qualifications. This

---

1. More accurately termed "constructive" condition, 3 *Williston, Contracts* (Rev. Ed.), sec. 668.

Court, in *Warner v. Miltenberger,* 21 Md. 264, 274, (a will case) quoted with approval from the case of *Wooster v. Butler,* 13 Conn. 309, as follows:

> "That the construction of written documents is a matter of law, and is not in ordinary cases to be submitted to the jury, as a matter of fact, is true; but where the doubt is produced by the existence of collateral and extrinsic facts, not appearing upon the instrument, its consideration ceases to be a matter of mere legal construction, and the intention of the parties is to be sought for, by a recurrence to the state of facts as they existed when the instrument was made, and to which the parties are to be presumed to have reference. The ambiguity in such case, is a latent one, which may be explained by parol evidence and submitted to the jury."

This language was again quoted, with approval, in the later case of *Keyser v. Weintraub,* 157 Md. 437, 445, 146 A. 275 (a contract case); and the *Keyser* case was cited in *Baltimore Luggage Co. v. Ligon,* 208 Md. 406, 413, 118 A. 2d 665. See also 17 *C. J. S., Contracts,* sec. 616 n. 11. Professor Williston recognizes this qualification of the general rule [2] when he states:

> "The jury's function in the interpretation of documents then will arise wherever, in view of the surrounding circumstances and usages offered in evidence, the meaning of the writing is not so clear as to preclude doubt by a reasonable man of its meaning. If the meaning after taking the parol evidence, if any, into account is so clear that no reasonable man could reach more than one conclusion as to the meaning of the writing under the circumstances, the court will properly decide the question of fact for itself as it may any question of fact which is equally clear."

---

**2.** 3 *Williston, Contracts,* (Rev. Ed.), sec. 616.

We think the ruling of the trial court was correct. It comes within the scope of the holding in the *Keyser* case. The true meaning of the contract was not such, after taking the parol evidence into account, as to make it so clear that no reasonable man could reach more than one conclusion concerning the same. We find no error ·in the trial court's submitting the question to the jury for its determination.

The appellant cited to us, on its first point, the case of *Compania de Astral v. Boston Metals Co.*, 205 Md. 237, 107 A. 2d 357, 108 A. 2d 372, but we find nothing in that case that conflicts with anything we have said above.

## II

The appellant next contends that if it be assumed that a valid contract existed between Seeds and Montauk, its non-performance was the direct result of governmental action, which served to nullify the obligations of both parties. It contends that the decision of the Commission to assume direct supervision of the maintenance of the sewage system makes applicable the "frustration" doctrine of contracts, and renders its obligation to perform nugatory. 6 *Williston, Contracts,* secs. 1935, 1936, 1937, 1939; *Restatement, Contracts,* sec. 454 *et seq.; Wischhusen v. Spirits Co.*, 163 Md. 565, 568-570, 163 A. 685; *Patch v. Solar Corp.*, (C. C. A. 7th), 149 F. 2d 558.

In the instant case, this question was submitted to the jury. The fact that it was so submitted was not objected to by the appellant. It made no motion for a directed verdict on the ground of frustration, but objected to the court's charge with reference thereto. The trial court had instructed the jury:

"Now the Court instructs you that the law in connection with a matter of this kind is that if you find that there was a contract between the plaintiff and the Montauk Corporation, and that the Montauk Corporation was prevented from performing its contract with the plaintiff by the actions of the Commission and without any fault or action on the part of the Montauk Corporation, then you will find for the

defendant, but if you find that at the time that the offer of the plaintiff was accepted by the Montauk Corporation that the circumstances were such as to indicate that there was a possibility of interference with the performance by the Commission, and if you further find that the acceptance of the plaintiff's contract by the Montauk Corporation was unconditional, then you are instructed that the risk of such interference is assumed by the Montauk Corporation."

To this instruction, the appellant made the following objection:

"We respectfully except to your Honor's instruction on the law as to frustration. The proper instruction, we think, on the question of frustration is that if the jury find that there was a contract between the plaintiff and the defendant, Montauk, and that its performance was prevented by an action of a governmental authority, namely, the Commission, that the parties to the contract are left in status quo and there is no right of recovery available to the plaintiff."

The general principle underlying commercial frustration is that where the purpose of a contract is completely frustrated and rendered impossible of performance by a supervening event or circumstance, the contract will be discharged. The courts in determining whether frustration will apply usually look to three factors. The first and probably most important is whether the intervening act was *reasonably foreseeable* so that the parties could and should have protected themselves by the terms of their contract. The courts then must consider the questions of whether the act was an exercise of sovereign power or *vis major,* and whether the parties were instrumental in bringing about the intervening event. The courts have generally held that if the supervening event was reasonably foreseeable the parties may not set up the defense of frustration as an excuse for non-performance. The ma-

jority of the courts stress this principle in deciding cases on frustration, and hold that if the parties could have reasonably anticipated the event, they are obliged to make provisions in their contract protecting themselves against it. 18 University of Cincinnati L. Rev. 536; cf. *State v. Dashiell,* 195 Md. 677, 689, 75 A. 2d 348.

It will be noted that appellant's requested instruction made no reference to the "reasonable foreseeability" of the Commission assuming direct control of the maintenance of the sewage pumping station or the possibility that the appellant was instrumental in bringing about this event, but requested the court to instruct the jury that if the performance of the contract were prevented, under any circumstances, by governmental authority, namely, the Commission, then the parties were both discharged from any obligation under the contract. This Court stated in *State v. Dashiell, supra,* at page 689:

> "But an order which interferes with the performance of the contract is not an excuse if the circumstances surrounding the formation of the contract are such as to indicate that the possibility of such interference was recognized and the risk of it was assumed by the promisor."

While the instruction given by the trial court with reference to frustration may have been, to some degree, inaptly phrased and, perhaps, not quite so complete as was desirable, we are unable to conclude that the jury was misled or confused with reference to the subject; consequently, we find no reversible error in this contention of the appellant.

### III and IV

The appellant complains that the appellee lacked a necessary license, and there was no proof of the delivery of the contract which was sued upon by the appellee. However, these points were not properly reserved for our determination. At the conclusion of the appellee's testimony, the appellant made a motion for a directed verdict and, at that time, raised these questions. It thereafter offered evidence on its behalf, but failed to renew the motion at the conclusion of all of the

evidence, or to request instructions with reference thereto by the trial court in its charge to the jury. Under these circumstances, the questions are not properly before us for decision. Maryland Rules 552 b, 554 d.

## V

The appellant further argues that the trial court erred in refusing to permit it to present evidence of "economic and financial duress resulting from its negotiations with the Commission." It maintains that it was entitled to introduce such evidence under the doctrine of "business compulsion." Even after a careful reading of the appellant's brief, it is difficult to discern, with certainty, just what this contention is. The only authority to which the appellant refers is an annotation in 79 A. L. R. 657, but the doctrine mentioned is dealt with in 5 *Williston, Contracts,* secs. 1608, 1618, and elsewhere. A succinct statement of the principle is contained in 79 A. L. R. 658, which briefs the opinion in *Illinois Merchants Tr. Co. v. Harvey* (Ill.), 167 N. E. 69, wherein it is said:

> "The ancient doctrine of duress of person (later of goods) has been relaxed and extended so as to admit of compulsion of business and circumstances; and the rule deducible from the authorities is that where one, to prevent injury to his person, business, or property, is compelled to make payment of money which the party demanding has no right to receive, and no adequate opportunity is afforded the payer effectively to resist such payment, it is made under duress and can be recovered."

It seems clear that this rule has no application to the facts in the case under consideration. Here, the appellant was not the plaintiff below endeavoring to recover money wrongfully required to be paid to another, nor was there any claim that the contract sued upon in this case was procured by duress. If it be the contention of the appellant that its contract with the Commission was brought about by "business compulsion," which, as a matter of law, excused its non-performance of its obligation to Seeds, no authority is cited to sustain such a

502

proposition, and it is doubted that any can be found. There was no error in the trial court's refusal to admit this evidence.

As stated at the outset, no judgment was entered below on the verdict in favor of the Commission. There is therefore nothing before us with reference to it, as it is indisputably clear that there is no right to appeal from a verdict.

*Judgment affirmed with costs.*