BALDI CONSTRUCTION ENGINEERING, INC.
*v.* WHEEL AWHILE, INCORPORATED

[No. 102, September Term, 1971.]

*Decided December 13, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*David J. Carpin,* with whom was *Leo Wm. Dunn, Jr.,* on the brief, for appellant.

*Donna C. Aldridge,* with whom were *Machen & Aldridge* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

This appeal involves the question of whether a verbal understanding between the parties to a cost plus construction contract, that the proposed project would be within a given cost range, justified the cancellation of the written contract by the property owner when the contractor presented an estimate substantially in excess of the price range contemplated between the parties, the written contract containing no mention of any cost estimate.

The appeal arises from the execution on February 18, 1969, of an American Institute of Architects (A.I.A.)

standard form of "cost of the work plus a fee" contract by the appellant, Baldi Construction Engineering, Inc. (Baldi), and the appellee, Wheel Awhile, Incorporated (Wheel Awhile). The contract provided for Baldi to construct a roller skating rink for Wheel Awhile on property owned by the appellee in Lanham, Maryland. The price to be paid by Wheel Awhile for the erection of the rink was to be all actual costs of engineering, architectural, surveying and testing work plus a 5% fee and all construction costs plus a 10% fee. Although plans and specifications were not incorporated into the contract at the time of execution, it was provided that they were "to be listed when approved by Owner and Contractor."

Prior to the execution of the A.I.A. contract, Mr. Eugene F. Baldi, the President of the appellant corporation, together with Mr. John D. Becker and Mr. Maurice E. Hankey, agents for Wheel Awhile, inspected a roller rink which had been built by Mr. Hankey in Reading, Pennsylvania and which was to serve as a prototype for the rink to be constructed in Lanham. The testimony adduced in the lower court reveals a discrepancy as to what took place during the meeting in Reading. Mr. Becker testified that Mr. Baldi was made aware of the fact that Wheel Awhile had only $160,000.00 to spend for the Lanham project and that Mr. Baldi stated that he could build the Lanham rink for that amount or at a figure lower than the $160,000.00 cost of the Reading rink. Mr. Hankey confirmed Mr. Becker's testimony, however, Mr. Baldi testified that he could not recall any discussion concerning the cost of the proposed rink.

Mr. Lewis, an architect in Prince George's County, was given a copy of the plans and specifications for the type of structure which had been built in Reading, Pennsylvania, and for the sum of $1,000.00 took on the assignment of adjusting the plans to the Lanham site. The building as finally constructed in Prince George's County was some 20 feet longer than the Reading building and some 2,000 square feet larger in area. The architect com-

pleted the first preliminary drawings on March 4, 1969, although the written contract executed February 18, 1969, states they were then prepared. The building permit applied for on April 29, 1969, stated the construction cost to be $80,000.00.

In June, 1969, some weeks after Baldi had begun work on the Lanham site, Baldi presented Wheel Awhile a cost-run-down, showing a projected total construction cost of $230,651.00 for the rink. Upon receipt of the run-down, Mr. Hankey of Wheel Awhile demanded that Baldi stop work on the project. Wheel Awhile then proceeded to complete the construction of the rink at a cost of $167,705.74.

Baldi brought suit against Wheel Awhile in the Circuit Court for Prince George's County alleging that the appellee breached the contract that it signed with Baldi and sought damages in the form of profits lost because of the breach. At the request of the defendant the case was removed to the Circuit Court for Calvert County where it was heard by Bowen, J., without a jury. The court ruled that Wheel Awhile was justified in refusing to perform the contract since it would have been impossible for it to pay the projected cost of $230,651.00. However, the court proceeded to award Baldi a judgment in the amount of $3,264.23 on a *quantum meruit* basis from which Baldi now appeals.

In this case we agree with the conclusion reached by the lower court but for a different reason. The court below predicated its finding that Wheel Awhile should not be liable on the cost plus contract, on the theory that Baldi knew that the outer limits of Wheel Awhile's financial capability was in the $160,000.00 cost range and that by presenting it with an estimate of $230,651.00 for the building, rendered the contract on the part of Wheel Awhile impossible of performance. However, we do not believe that the financial inability of one of the contracting parties to meet the contract price is an adequate ground upon which to grant rescission of a contract on the basis of impossibility of performance. See 6, *Corbin*

*on Contracts,* Section 1332, p. 362-363 and *Christy v. Pilkinton,* 273 S.W.2d 533 (Ark. 1954), wherein the distinction between subjective impossibility of performance and objective impossibility is discussed.

In reaching its conclusion the lower court did make the finding of fact that Baldi knew that Wheel Awhile could not finance a building substantially in excess of $160,000.00. Implicit in such a finding is the conclusion that the court believed the testimony of witnesses Becker and Hankey, agents of Wheel Awhile, who testified as to the discussions they had with Mr. Baldi, representing Baldi, wherein it was made clear to him that Wheel Awhile could not afford a building in excess of $160,000.-00. Witnesses Becker and Hankey both testified that they informed Baldi that they had $80,000.00 in cash and could obtain financing for an additional $80,000.00. This discussion took place in October or November of 1968, while the representatives of the parties were viewing the prototype roller rink in Reading, several months prior to the execution of the contract. Mr. Hankey also testified that after execution of the contract and prior to the commencement of the construction, he had repeatedly tried to obtain an estimate from Baldi but to no avail. Maryland Rule 886 requires that we accept the finding of facts of the lower court unless they appear to be clearly erroneous, which in this instance they do not. The question then to be answered is, what relevance did the fact that the contracting parties shared a mutual knowledge of this $160,000.00 limitation on construction cost have on the contract subsequently executed on February 18, 1969.

No objection was raised as to the admissibility of the testimony regarding the $160,000.00 limitation on construction costs by Baldi's counsel; Mr. Baldi simply denied it in his own testimony. However, in the case at bar, although we are not faced with the admissibility of parol evidence *vel non,* as we were in *Pumphrey v. Kehoe,* 261 Md. 496, 504, 276 A. 2d 194 (1971), and *Mascaro v. Snelling and Snelling,* 250 Md. 215, 229, 243 A. 2d 1 (1968),

we must view the relevance of this parol evidence with reference to the written cost plus contract.

In *Ebert v. Millers Fire Ins. Co.*, 220 Md. 602, 610, 155 A. 2d 484 (1959), Chief Judge Brune writing for the court, commented:

> "* * * Where, however, the surrounding circumstances, as shown by evidence properly admissible or *admitted without objection,* create a doubt as to the meaning of the contract, the question of the meaning of the contract, may be submitted to the jury * * *." (Emphasis supplied)

See also 3, *Corbin on Contracts,* Section 554.

The case of *Montauk Corp. v. Seeds,* 215 Md. 491, 138 A. 2d 907 (1958) is somewhat analogous to the case at bar. There the appellant's principal contention was that the contract was subject to an oral implied condition precedent that it had to be approved by a third party before it was binding between it and the appellee. Judge Prescott, later Chief Judge, writing for the Court stated:

> "The contract was in writing and extraneous evidence of the surrounding circumstances was admitted, without objection. It is therefore unnecessary to decide whether that evidence was admissible because of any ambiguity in the terms of the written instrument under consideration. *Irving Trust Co. v. Williams, Inc.,* 168 Md. 588, 597, 178 A. 848. At the trial below, the question of the intention of the parties as to whether the contract was conditional or unconditional was presented to the jury, and its decision was against the appellant. There is no doubt that as a general rule the construction of a written instrument is a duty of the court. However, this general rule is subject to certain qualifications. This Court, in *Warner v. Miltenberger,* 21 Md. 264, 274 (a will case) quoted with approval from the case of *Wooster v. Butler,* 13 Conn. 309, as follows:

'That the construction of written documents is a matter of law, and is not in ordinary cases to be submitted to the jury, as a matter of fact, is true; but where the doubt is produced by the existence of collateral and extrinsic facts, not appearing upon the instrument its consideration ceases to be a matter of mere legal construction, and the intention of the parties is to be sought for, by a recurrence to the state of facts as they existed when the instrument was made, and to which the parties are to be presumed to have reference. The ambiguity in such case, is a latent one, which may be explained by parol evidence and submitted to the jury.' " 215 Md. at 496-497.

See also *Freeman v. Stanbern Construction Co.*, 205 Md. 71, 77-78, 106 A. 2d 50 (1954) ; *Cf. Saliba v. Arthur F. Charlotte, Inc.*, 259 Md. 588, 593, 270 A. 2d 656 (1970).

The instant case was heard below by the trial judge without a jury and it was definitely proper for him, sitting as a jury, to make a finding of fact concerning the existence of the agreement of a specific cost limitation upon the evidence before him. *Ebert, supra,* and *Montauk Corp., supra.* Once having determined that such an understanding did exist, its effect upon the written contract could not properly be ignored. *Freeman, supra.*

Additionally the cost plus contract contained at least one obvious misstatement of fact and that is, that in Article I of the contract it states that the plans and specifications "have been prepared by: Stanley T. Lewis * * * hereinafter called the architect," whereas the testimony of Mr. Lewis shows that the first preliminary plans and specifications, although similar to the Reading roller rink, are dated March 4, 1969, some two weeks after the date of execution of the contract which makes reference to them.

Also, in Article I of the contract, wherein the printed

A.I.A. form provides for an enumeration of the specifications, the parties inserted the words, "Plans and specifications to be listed when approved by the Owner and Contractor." We think the misstatement as to the completion of the plans by the architect and the fact that the plans and specifications at the time of the execution of the contract had not been approved by the owner and contractor, are supportive of the fact that the parties had agreed to a cost range limitation and the plans and specifications had not as yet been tailored to come within that range.

In the case at bar, Wheel Awhile's representative continuously, before and after executing the contract, endeavored to obtain an estimate from Baldi, after informing Baldi as to their financial limitations, but such an estimate was not forthcoming until after construction had commenced. It then proved to be substantially in excess of that contemplated in the negotiations between the parties.

This opinion is not to be construed as requiring that an estimate is to be considered a material element in a cost plus contract. In the case at bar the lower court found the parties had definitely agreed as to the outer limits of cost. Some cost plus contracts expressly provide that the cost will not exceed a specified amount. In this instance, although the amount was not expressly stated in the written contract, the evidence which was admitted without objection showed that the parties had contemplated a maximum cost range. See 17A C.J.S., *Contracts,* § 367 (2), pp. 378-379, and cases cited therein. It is probably the rule, rather than the exception, that most cost plus contracts are not predicated on any specified cost range agreed upon between the parties and it is not the intent of this opinion to alter the law pertaining to such agreements.

What we have here is a cost plus contract without any definite plans or specifications at the time it was executed and which by a verbal understanding was predicated on an estimate in the $160,000.00 cost range. If Baldi had

been able to give an estimate as to the construction of the building within the price range contemplated in the pre-contract negotiations, the contract would have been binding on Wheel Awhile. *Cf. Meyers v. Josselyn*, 212 Md. 266, 271-272, 129 A. 2d 158 (1957), wherein an employee endeavored to sue an employer on a contract whereby he was to receive 25% of a bonus pool to be formed from the profits of the business but the manner of determining profits was inclusive and left solely to the discretion of the employer and for that reason unenforceable.

In the case at bar, Baldi failing to present an estimate of costs within the price range agreed upon by the parties, we think the court below properly considered the rescission of the contract by Wheel Awhile as justified and correctly limited the judgment to a *quantum meruit* award for the labor performed by Baldi prior to rescission.

*Judgment affirmed, appellant*
*to pay costs.*