JEFFREY SNEIDER-MARYLAND, INC. *v.* GERARD M. LaVAY

[No. 582, September Term, 1974.]

*Decided October 3, 1975.*

The cause was argued before MORTON, THOMPSON and POWERS, JJ.

*Charles Norman Shaffer*, with whom were *Shaffer, McKeever & Fitzpatrick* on the brief, for appellant.

*Joe M. Kyle*, with whom was *Herbert W. Jorgensen* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

This case arose from transactions relating to purchase and sale of a group of nine residential building lots in Montgomery County, adjacent to Heathwood Court, between River Road and Bradley Boulevard. It is apparent that the difficulty between the parties is attributable to a so-called sewer moratorium imposed in the Cabin John drainage basin, in which the property lies.

Appellant here is Jeffrey Sneider-Maryland, Inc., which we shall refer to as "Sneider". Appellee is Gerard M. LaVay. A background review of their contractual relationships to the property is desirable.

On 31 July 1967 LaVay entered into a contract to purchase the lots from one Robert G. Ellis, who signed on behalf of a corporation to be formed. Because of unrealized contingencies in the contract, and because he forewent an option to cancel it, LaVay in 1973 still held the right to buy the lots under his 1967 contract. By an Assignment of Contract dated 7 April 1973, LaVay assigned his rights to Sneider. We quote two provisions of the Assignment, which are pertinent to the issues in this case.

Paragraph 3 provided:

> "The Assignee hereby agrees to pay the Assignor as a total consideration for the assignment herein, the sum of One Hundred Eighty Thousand Dollars ($180,000.00). Said sum shall be payable $90,000.00 cash upon the execution of this Assignment and $90,000.00 cash fifteen days prior to the time of settlement under the contract attached hereto as

Exhibit "A" as hereinafter set forth in paragraph numbered 6. Time is of the essence for payment under this paragraph. In the event payment is not made as provided herein, this Assignment shall be null and void and the sum paid in the amount of $90,000.00 shall be forfeited as fixed and liquidated damages and the parties shall be relieved of all further liability to each other and further, Assignor shall have the right to settle under the contract as if this Assignment had not been made."

Paragraph 10 provided:

"The Assignor warrants and represents that sanitary sewer and water facilities are or will at settlement be at a property line of the subject property, and that the said property is sewerable and that the sewer is or will at settlement be available for connection, and in size sufficient to service the subject property for the purpose for which the Assignee intends to put the same; namely, the erection of nine (9) single family homes. In the event the water and sewer facilities are not as set forth in this paragraph, all sums paid by Assignee to Assignor shall be refunded to Assignee and the parties shall be relieved of all further liability to each other. In the event Assignee settles on the contract with "seller", all liability of Assignor under this Assignment shall thereafter be null and void, it being conclusively presumed that Assignee has investigated the availability of water and sewer prior to settlement and satisfied itself that these items are as represented by Assignor. All tap fees have been paid by Assignor in the amount of $6,390.00, which sum shall be repaid by the Assignee to the Assignor at the time of settlement. If Assignee elects to make any permit applications prior to settlement, Assignor will cooperate and join in where required by Assignee."

LaVay promised more with respect to sewer and water than his seller had promised him. The 1967 contract, made a part of the 1973 Assignment, contained this promise:

"Seller further agrees that it will cause to be installed underground power lines, sewer and water lines and connections thereto so as to make sewer and water available at either the front or rear lot line of each lot sold by this agreement."

It appears to be undisputed that at the time of the Assignment on 7 April 1973 sanitary sewer and water facilities were in fact "at a property line of the subject property", that future hookups had been authorized by the Washington Suburban Sanitary Commission, and tap fees paid; and that all of these facts were known to the parties.

Time for settlement under the 1967 contract was fixed as 30 days after acceptance by Montgomery County of a street which the seller had undertaken to construct. Before this event took place, and pursuant to orders of the Secretary of Health and Mental Hygiene dated 16 August 1973, the Washington Suburban Sanitary Commission, by a resolution adopted on 19 September 1973, imposed a prohibition against any hookup to a sanitary sewerage line in the Cabin John drainage basin unless the structure to be hooked up was under construction on 13 September 1973 under a County building permit issued on or before 16 August 1973.

The undisputed effect of this prohibition was that sewer was not available to service the property.

On 23 October 1973 Sneider filed in the Circuit Court for Montgomery County, in equity, a bill of complaint for declaratory judgment, rescission, injunction, impression of constructive trust, and other relief. Later, with leave of court, the complaint was amended. Named as defendants were LaVay, and others who then held title to the property, subject to the 1967 contract. Time for settlement under the 1967 contract was triggered by Montgomery County's acceptance, on 18 December 1973, of the street provided for in the contract. LaVay settled. The pending case was dismissed

as to the other defendants. On 6 and 7 August 1974 trial was held before Judge David L. Cahoon.

As we see it the critical issue tried and decided in the court below was whether LaVay's warranty of 7 April 1973 that "the sewer is or will at settlement be available for connection" was breached.

On 7 August 1974 the chancellor rendered an oral opinion, and on 27 August 1974 signed a decree which declared the rights of the parties as follows:

"1. The Plaintiff has not established a right to the rescission of the sales contract dated July 31, 1967 attached to the Amended Bill of Complaint as Exhibit A.

"2. The Plaintiff has not established a right to the rescission of the assignment of contract dated April 7, 1973, attached to the Amended Bill of Complaint as Exhibit B.

"3. The Plaintiff was not, as a consequence of the Order adopted September 19, 1973, attached to the Amended Bill of Complaint as Exhibit C, relieved without forfeiture of paying the Defendant fifteen (15) days prior to the settlement date called for in Exhibit A, the additional $90,000.00 installment called for in that contract, nor was the Plaintiff relieved thereby of its obligation to settle with the record owners of the subject property.

"4. The Plaintiff has not established a right to an injunction prohibiting the Defendant from settling with the record owners of the subject property on the contract attached to the Amended Bill of Complaint as Exhibit A.

"5. The Plaintiff has not established a right to have a constructive trust impressed upon the subject property.

"6. The Plaintiff has not established its right to the entry of a judgment in its favor against the Defendant.

"7. The proper interpretation of the warranty contained in paragraph 10 of the Assignment of Contract attached to the Bill of Complaint as Exhibit B, which warranty reads as follows: 'The Assignor warrants and represents that sanitary sewer and water facilities are, or will at settlement be at a property line of the subject property, and that the said property is sewerable and that the sewer is or will at settlement be available for connection, and in size sufficient to service the subject property for the purpose for which the Assignee intends to put the same; namely, the erection of nine (9) single family homes' was fully performed by the Defendant because the sewer and water facilities were at the property lines of the lots which are the subject of this action and were available for connection at the time of the execution of the Assignment of Contract dated April 7, 1973.

"8. The Defendant is entitled to retain as liquidated damages pursuant to Paragraph 4 of the Assignment of Contract attached to the Bill of Complaint as Exhibit B, the $90,000.00 which was paid to him by the Plaintiff."

The important phrase in the Assignment, "that the sewer is or will at settlement be available for connection" was, to be sure, expressed in the disjunctive, by use of the word "or". Sneider contends that it was the intent of the parties that sewer be available for connection at the time of settlement, and that the warranty should be read as if the conjunctive "and" had been used. LaVay contends that the meaning of the disjunctive phrase is clear, and there is no ambiguity which requires judicial construction.

The chancellor agreed with LaVay's contention. In his oral opinion, after noting that the contract contemplated an ultimate settlement upon the final completion of the subdivision — construction of all the facilities and their being in place, he said:

"With those purposes, which are manifest in the

contract, we look to Paragraph 10 of the * * * assignment agreement containing the warranty provision. Then the significance of the phrases questioned becomes apparent and acute. If it was the intention of the assignor and the assignee that the warranty be a matter that necessarily subsisted at the time of settlement, there is no necessity for the expression in the present tense, because then it would be of no consequence necessarily to warrant that sewer and water facilities are at the present time available. There is no necessity for the phrase. The warranty could merely express itself as in the future — that at time of settlement the property would be sewerable and be available at the time of settlement."

* * *

"My conclusion is that the intention of the parties was, by this phrase, that there is a warranty as to a current circumstance or, in the alternative, that it will prevail at a certain time. If it is available at this point, the assignee may exercise his elections and secure the availability. This is an option which apparently he bargained for, if you read the whole document. The contrary would be to consider the matter superfluous. I cannot assume a document involving matters of this magnitude, forfeitures, the express excuse of liability in the given circumstances, that they were not careful in the choice of their words.

"If they intended that it was to be a present warranty and a continuation of the circumstances as a condition precedent, an obligation under the contract, it seems to me from a reading of all of the documents that they would have included the word 'and.' This is not a matter which I am at liberty to conclude is inadvertence, because it is repeated twice. It is in the same paragraph, and very clearly in the disjunctive. For this reason I have concluded

that the contract, or warranty, is with respect to the availability of sewer and water facilities either at the time of the assignment or at the time of settlement on the property."

The Court of Appeals stated in *Walton v. Hospital Association,* 178 Md. 446, 13 A. 2d 627 (1940), at 450:

"The words of a guaranty should receive a fair and reasonable interpretation to effectuate the intention of the parties, and the circumstances accompanying the transaction may be considered in seeking the intention of the parties. The court should give the instrument that construction which will best accord with the intention, as manifested by the language in the light of all the surrounding circumstances, without stretching the words beyond their import in favor of the creditor or restricting them in aid of the guarantor." (Citations omitted)

The Court further said, at 452:

"It is a cardinal rule of construction that the intention of the parties to a contract must prevail, unless inconsistent with some rule of law, and this intention must be gathered from the terms of the contract considered as a whole, and not from the clauses considered separately."

In construing a contract of insurance the Court of Appeals said in *First National Bank v. Maryland Casualty Co.,* 142 Md. 454, 121 A. 379 (1923), at 460:

"We will first determine in this case whether, by a proper construction of the contract of insurance, the contents of the safe deposit boxes were covered by the terms and provisions of the policy. To determine this question, we must ascertain the intention of the parties, gathered from the language employed by them, and in ascertaining that intention, we are to consider the character of the contract, its object and purpose, and the facts

and circumstances surrounding the parties at the time of its execution, by which they would ordinarily be influenced in making it."

A very apt and clear expression of the approach to be taken by a court applying principles of equity in construing a contract, was written by Mr. Justice White for the Supreme Court in *O'Brien v. Miller,* 168 U. S. 287, 42 L. Ed. 469, 18 S. Ct. 140 (1897), when he said:

"But the question presented involves not the interpretation of this language apart from the whole agreement, but is, on the contrary, the ascertainment of the meaning of the entire contract. The fallacy which underlies the assertion as to want of all ambiguity in the bond arises, therefore, from presupposing that in order to establish want of ambiguity in a contract a few words can be segregated from the entire context, and that because the words thus set apart are not intrinsically ambiguous, there is no room for construing the contract itself. In other words, the confusion of thought consists in failing to distinguish between the contract as a whole and some of the words found therein. If the erroneous theory were the rule, then, in every case, it would be impossible to arrive at the meaning of a contract, in the event of difference between the contracting parties, since each would select particular words upon which they relied, and thus frustrate a consideration of the whole agreement. The elementary canon of interpretation is, not that particular words may be isolatedly considered, but that the whole contract must be brought into view and interpreted with reference to the nature of the obligations between the parties, and the intention which they have manifested in forming them."

In two recent cases dealing with construction of contracts, the Court of Appeals in *Orkin v. Jacobson,* 274 Md. 124, 332 A. 2d 901 (1975) and *Billmyre v. Sacred Heart Hospital,* 273

Md. 638, 331 A. 2d 313 (1975), reviewed and discussed numerous authorities. In *Billmyre*, Judge Singley said for the Court, at 642-43:

"We have long since passed the point in time where the clear and unambiguous language of an agreement will give way to what the parties thought the agreement meant or intended it to mean. [Citations omitted] Where a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed. [Citations omitted] When the language of a contract is clear, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. [Citations omitted] Chief Judge Brune summarized the matter for the Court in *Slice v. Carozza Properties, Inc.*, 215 Md. 357, 368, 137 A. 2d 687, 693 (1958):

'As we turn to the authorities, we may note first that the theory of "objective law" of contracts has been almost universally adopted by this time. The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake. *Ray v. Eurice*, 201 Md. 115, 93 A. 2d 272. " * * * where there has been an integration of an agreement, those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean. The test in such case is objective and not subjective. * * * *Williston* * * * Sec. 94, page 294, says: 'It follows that the test of a true interpretation of an offer or acceptance is not what the party

making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.' " *Ray v. Eurice, supra,* p. 127.' "

Whether construction of a contract is necessary or permissible is discussed in 17 Am.Jur.2d, *Contracts,* § 241, where it is said:

"As a general proposition, where the terms of a writing are plain and unambiguous, there is no room for construction, since the only office of judicial construction is to remove doubt and uncertainty. It is fundamental that the principles of construction cannot be applied to vary the meaning of that which is otherwise clear and unambiguous, and, in this respect, it is to be noted that if the language of the contract is plain and unambiguous, the intention expressed and indicated thereby controls, rather than whatever may be claimed to have been the actual intention of the parties. It has been said that it is only where the language of a contract is ambiguous and uncertain and susceptible of more than one construction that a court may, under the well-established rules of construction, interfere to reach a proper construction and make certain that which in itself is uncertain. As shown in subsequent sections, however, even where the language of a contract considered by itself has a plain, ordinary meaning, the language may sometimes be properly interpreted as having been used in a different sense."

Strict rules of grammar need not always be applied. In 17 Am.Jur.2d, *Contracts,* § 278, it is stated:

"Although the grammatical construction of a contract is often a reliable signpost in the search for the intention of the parties, at times the language of a contract, read as a whole and in the light of the circumstances surrounding its

execution, may disclose an intention which would be thwarted by a strict grammatical construction; in such case the court is not bound to follow the signpost of grammatical construction, particularly when it appears to point in the wrong direction. Intention may be formulated in terms that are not grammatical. Accordingly, while a court, in construing a contract, will give due force to the grammatical arrangement of the clauses, it will disregard the grammatical construction if it is at variance with the intent of the parties as indicated by the contract as a whole."

Dealing specifically with the source of the difficulty in the present case, the same text says, in § 283:

"The words 'or' and 'and' in a contract will be changed to read 'and' and 'or' where it is plain that they were so intended to be used. These words should be interpreted in a copulative, and not in a disjunctive, sense when necessary to the spirit and intent of the document."

In our view it is of little significance whether we arrive at the proper construction of the contract by finding its plain and unambiguous meaning, considered in the frame of reference of its subject matter, and its object or purpose, or whether we find an ambiguity and resolve it by a process of interpretation, considering all the surrounding circumstances, to ascertain the intention of the parties. We hold that the plain meaning of the contract of Assignment, and the intent of the parties to it, was that at the time of settlement sewer would be available for connection, so that Sneider, the assignee, could use the property for the declared purpose — the erection of nine single family homes.

While courts should, whenever possible, construe a contract so as to give effect to all parts of it, so that there will be no surplusage, this ideal is sometimes impossible to achieve. We think it would be impossible here. If LaVay's warranty were satisfied by the availability of sewer for connection at *either one* of two specified times — the date of

the Assignment *or* the date of settlement — then the entire warranty may have been surplusage. The parties knew that in one sense, sewer was available, at least potentially, at the time of the Assignment. It would be illogical to say that simultaneously with its making, the terms of the warranty were satisfied. We hold that the warranty that sewer would be available applied to the time of settlement. The chancellor erred in holding to the contrary.

The failure of the warranty of availability of sewer means, under the contract of Assignment, that all sums paid by Sneider to LaVay shall be refunded to Sneider, and the parties shall be relieved of all further liability to each other. The decree will be reversed and the case remanded for passage of a decree in accordance with this opinion. The decree may include a provision impressing a trust on the property in the hands of LaVay to secure payment of the sum to be refunded.

Because we hold that LaVay warranted that sewer would be available for connection at the time of settlement, it is not necessary to rule upon two other points raised and argued by Sneider — that the forfeiture was a penalty which equity should not enforce, and that independently of the warranty Sneider was entitled to rescind the contract because its commercial purpose was frustrated by an exercise of sovereign power.

We shall comment briefly on the rule that frustration of commercial purpose may, in certain circumstances, excuse performance of a contract. The Court of Appeals has discussed the rule in numerous cases, including *Wischhusen v. American Medicinal Spirits Co.*, 163 Md. 565, 572-73, 163 A. 685 (1933); *Fast Bearing Co. v. Precision Development Co.*, 185 Md. 288, 308-09, 44 A. 2d 735 (1945); *State v. Dashiell*, 195 Md. 677, 689, 75 A. 2d 348 (1950); *Montauk Corp. v. Seeds*, 215 Md. 491, 498-500, 138 A. 2d 907 (1958); *Acme Markets v. Dawson Enterprises*, 253 Md. 76, 90-91, 251 A. 2d 839 (1969). In *Equitable Trust v. Towson Manor*, 27 Md. App. 420, 429-32, 340 A. 2d 759 (1975), we found the rule inapplicable to the facts.

Among these cases cited, the statement perhaps most

applicable to the present case is found in *Montauk Corp. v. Seeds, supra,* where the Court said, at 499-500:

> "The courts have generally held that if the supervening event was reasonably foreseeable the parties may not set up the defense of frustration as an excuse for non-performance. The majority of the courts stress this principle in deciding cases on frustration, and hold that if the parties could have reasonably anticipated the event, they are obliged to make provisions in their contract protecting themselves against it."

In our view of the present case the supervening event was reasonably foreseeable. The parties knew that for almost three years there had been restrictive, although not prohibitory, orders or regulations regarding sewer hookups. Sneider did make provision in the contract protecting itself against the reasonably anticipated prohibitory order. The rule of commercial frustration is inapplicable because its application is not necessary.

> *Decree reversed.*
>
> *Case remanded for passage of a decree in accordance with this opinion.*
>
> *Appellee to pay costs.*