FRANK DAMAZO *v.* HAZEN B. NEAL ET UX.

[No. 878, September Term, 1975.]

*Decided September 10, 1976.*

The cause was argued before MORTON, POWERS and DAVIDSON, JJ.

*Leon B. Pennington* for appellant.

*John Wheeler Glenn* and *Thomas A. Wojdygo,* with whom were *Edwin F. Nikirk, II,* and *O'Connor, Preston & Glenn, P.A.* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

Several years prior to 1950 Hazen B. Neal and his wife, Lola B. Neal, in three separate transactions, had assembled a parcel of slightly less than two acres of land fronting some 225 feet on East Street, in an industrial area in the City of Frederick. The parcel extended between parallel lines, at approximate right angles to the street, to a depth of about 350 feet.

In 1974, when the Neals decided to sell part of the property, it was improved by several buildings, at least one of which had been used to house an automobile dealership. By a contract dated 9 October 1974 Mr. and Mrs. Neal agreed to sell and Frank Damazo agreed to buy more than half of the land, including a large building and other facilities. They attached to the contract a sketch showing the dimensions of the land to be conveyed, and a right of way reserved by the sellers. The contract provided:

"It is hereby understood and agreed that the property herein conveyed shall be surveyed at the expense of the seller to provide proper legal description, the metes and bounds of which shall conform generally to the attached rough sketch, however, the north line shall be 25 ft. from the north wall of the lubrication room and the Right-of-way shall be 15 ft. in width."

But for certain requirements imposed or sought to be imposed by the City of Frederick, there is little doubt that the parties would have carried out the terms of their contract in due course.

Settlement was not held, however, and on 2 January 1975 Dr. Damazo filed in the Circuit Court for Frederick County against Mr. and Mrs. Neal a "Bill of Complaint for Specific Performance" in which he prayed that the contract be specifically enforced, and that a trustee be appointed "to complete the necessary sub-division of the property so as to be approved by the City Planning Commission", and to convey the property to him in accordance with the terms of the contract. Attached to the complaint were several exhibits, including the contract and sketch, several letters

exchanged between counsel for the parties, and a plat prepared by a Registered Land Surveyor showing the property as a plan of subdivision.

After the Neals answered the complaint, Damazo took their depositions. The case was set for trial before Judge Samuel W. Barrick on 2 July 1975. Counsel submitted the case on stipulations as to the undisputed documents, and two other stipulations which we quote:

> "* * * that the sole issue to be decided by the Court in this case is whether the defendants can avoid specific performance of the contract * * * because they refuse to dedicate any land to the city for street, curb and sidewalks in order to comply with the Frederick City Planning Commission requirements of setback and dedication of land in order to approve resubdivision."

> "* * * that without an approved resubdivision of the subject property, the defendants cannot convey a good and merchantable title to the plaintiff as provided for in Paragraph 4 of the contract."

On 31 July 1975 Judge Barrick filed a Memorandum and Order, and dismissed the Bill of Complaint. Damazo appealed.

The survey called for by the contract was promptly ordered. It appears that the parties were advised and concluded that it was necessary that a subdivision plat be submitted to and approved by the City Planning Commission. It is not clear whether the plat was considered necessary to avoid a statutory penalty for conveying land without a plat, or as a requisite to recording the deed, or as affecting the validity of a deed recorded without reference to an approved plat. In any event, the parties stipulated at the trial that without an approved resubdivision plat the Neals could not convey a good and merchantable title.

According to the contract the purpose of the survey was to provide a proper legal description, by metes and bounds, of the property to be conveyed. The survey was prepared, however, as a "plan of subdivision", to be submitted to the

City Planning Commission for approval. The plat showed East Street to be 60 feet wide. A parcel designated as Lot #1, the parcel to be conveyed, contained 45,651 square feet, and had a frontage of 148.50 feet on East Street. The land to be retained by the Neals was given no lot number designation, but was shown to contain 33,419 square feet, and to have a frontage of 76.79 feet on East Street. The entire frontage on East Street was shown to be subject to a building restriction line 25 feet from the street. The plan showed no dedication to public use.

The surveyor certified that the plan was correct. The owners certified that they "hereby adopt this plan of subdivision, establish the minimum building restriction lines, dedicate the streets and alleys and walks to public use." The plat, dated 21 November 1974, was submitted to the City Planning Commission.

By a letter dated 11 December 1974 the City Engineer advised that the Commission had given "preliminary and final approval to the subdivision of the above property provided that the front property line be set back $12^{1}/_{2}'$ in order to meet the requirements of the Master Street Plan. This $12^{1}/_{2}'$ would be dedicated to public use for the widening of East Street."

Mr. and Mrs. Neal declined to dedicate any of their retained land to public use. The plan of subdivision progressed no further. Counsel for Damazo demanded that settlement be held at noon on 31 December 1974, in accordance with the contract and approved subdivision plan. Counsel for the Neals declined. He reiterated that they were not willing to dedicate any of their property in order to have the City approve the subdivision.

Appellant argues here: (a) that the Neals were bound to dedicate part of their land because the requirement was reasonably foreseeable; (b) that the Commission had no authority to require dedication, and the Neals should have contested the asserted requirement; (c) that the court erred in not decreeing partial specific performance as to the two original parcels which did not require subdivision, with an

abatement of the purchase price; and (d) that the court erred in ruling on the defense of frustration of purpose.

In his memorandum Judge Barrick discussed impossibility of performance, which he said was raised as a defense, and likened it to the doctrine of frustration of purpose. He observed that performance in this case was not literally impossible, because the Neals had the capability to put themselves in a position to perform. We agree that this case is not one of true impossibility, such as the Court of Appeals found to exist in *Acme Moving & Storage v. Bower*, 269 Md. 478, 306 A. 2d 545 (1973), where specific performance of a lease of a warehouse was denied. The evidence in that case showed that compliance by the lessor with a condition for obtaining an occupancy permit would constitute a violation of an existing special exception under the zoning ordinance. The Court agreed that performance was impossible. The lessee sought only specific performance, and did not claim damages.

*Levine v. Rendler*, 272 Md. 1, 320 A. 2d 258 (1974), was an action at law for damages for failure to perform. The defense of impossibility was raised to excuse non-performance. It was clear from the facts that performance was not truly impossible, merely that it would be more costly than had been contemplated, because of a change in local government regulations. The Court of Appeals said that the trial judge had correctly denied a motion for a directed verdict, holding that the possibility of that change should have been perceived by the parties who promised to perform.

Another case of true impossibility of performance was involved in *Wischhusen v. Spirits Co.*, 163 Md. 565, 163 A. 685 (1933), an action at law for damages for breach of an employment contract. The employer, a distiller of intoxicants during the era of Prohibition, hired the employee "to have the exclusive management and control of all operations at a particular distillery in the production of whiskey." The distiller could legally operate only with a permit from the federal government. Its application for the permit was denied by the government because it believed the employee to be not trustworthy or competent. Since performance

would be illegal, the Court held that it was legally impossible. It also held that under the facts in that case, impossibility of performance excused non-performance.

The applicable principles were considered further by the Court of Appeals in *State v. Dashiell*, 195 Md. 677, 75 A. 2d 348 (1950), when the Court, citing *Wischhusen*, said, at 689:

"It is a general rule of the common law that when the impossibility of performance arises after the formation of the contract, the failure of the promisor to perform is not excused. This rule was founded on the theory that if the promisor makes his promise unconditionally, he takes the risk of being held liable even though performance should become impossible by circumstances beyond his control. The unjust consequences of this general rule gave rise to certain exceptions. One of these is that a contractual duty is discharged where performance is subsequently prevented or prohibited by a judicial, executive, or administrative order, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty. [Citations omitted.] But an order which interferes with the performance of the contract is not an excuse if the circumstances surrounding the formation of the contract are such as to indicate that the possibility of such interference was recognized and the risk of it was assumed by the promisor.

"Thus, in those cases where a regulation of an administrative agency is already in force at the time of the formation of the contract, the decisive question is whether or not the promisor assumed the risk of interference by the regulation."

After commenting that the subject case was not one where the defense of impossibility of performance should be applied, Judge Barrick considered whether the Neals were obligated by their contract to meet the condition imposed by

the City Planning Commission which they would have to meet to enable themselves to perform the contract. In doing so he referred to "the doctrine of frustration of purpose", and cited *Montauk Corp. v. Seeds*, 215 Md. 491, 138 A. 2d 907 (1958). In *Jeffrey-Sneider Maryland, Inc. v. LaVay*, 28 Md. App. 229, 345 A. 2d 79 (1975), we cited a number of other Maryland cases in which a similar or analogous principle has been discussed.

We see no magic in a particular phrase. The basic rule is that a party is bound to do what he promised to do, or, in an appropriate case, to answer in damages. What he promised to do is to be found in the words he used, and in what is reasonably implied by those words. Compliance with a governmental requirement of which he knew, or should have known or foreseen, is reasonably implied.

Judge Barrick held in this case that the subdivision regulations were in existence at the execution of the contract, and the Neals knew or should have known that they would have to comply with those regulations before they could deed the property to Damazo. He also held that there was nothing in the subdivision regulations which put the Neals on notice that a dedication of a part of their retained property would be exacted from them as a condition to approval of a subdivision plat. Appellant does not question these conclusions. Indeed, he contends, alternatively, that the Commission had no authority to exact such a dedication.

The correctness of the conclusion that a requirement of dedication was not foreseeable is fortified by the fact that Damazo likewise failed to foresee it, and even more by the fact that the Registered Land Surveyor who prepared the subdivision plat apparently did not foresee it, because he made no provision for dedication on the plat.

Whether the obstacle to settlement in this case be described in terms of impossibility of performance, or frustration of purpose by unforeseeable governmental intrusion, or simply that the sellers should not be required to do more than they promised to do, we think the answer is properly found in what Judge Hammond (later Chief Judge)

said for the Court of Appeals in *Perlmutter v. Bacas*, 219 Md. 406, 149 A. 2d 23 (1959), at 411:

"A court of equity will decree specific performance almost as a matter of course if the terms of the contract are clear and unobjectionable, and although such relief is addressed to the sound discretion of the court, that discretion is not arbitrary. Where the contract is clearly established, it is the duty of the court to enter the decree. Nevertheless, the discretion of the court will be exercised to deny the relief where to grant it would be to compel the defendant to perform a contract which he did not intend to make or which he would not have entered into had its true effect been understood." (Citations omitted).

The chancellor correctly held that a requirement that the Neals dedicate a part of their retained land was not reasonably foreseeable. If Damazo felt that the City Planning Commission had no authority to require dedication, a question on which we express no opinion, he could have taken steps to require acceptance of the subdivision plat as submitted. No authority which would place that obligation on the Neals has been suggested to us. They had complied with their promise to have a survey (and, by implication, a subdivision plat) prepared, and presumably the Neals stood ready to convey in accordance with that plat. If they could not convey a good and merchantable title, as the parties stipulated they could not do, then under the contract the purchaser had the right to rescind, without liability upon the seller for damages.

Appellant's contention here that the chancellor should have decreed partial performance has no merit for two reasons. It was not raised below, and is not properly before us. Maryland Rule 1085. In addition, it is obvious that it would be impossible for the court to determine an abatement of the price. *Excel Company, Inc. v. Freeman*, 252 Md. 242, 250 A. 2d 103 (1969). A boundary line determined as appellant suggests would run through the existing building.

What appellant was really asking the court to do was to write a new contract for the parties, and then to compel the Neals to perform the new contract. The chancellor properly declined to do so.

*Judgment affirmed.*
*Appellant to pay costs.*