Gary SMOLIAK, et al., Appellants,

v.

John MYHR, United Farm Agencies, Inc., Respondents,

and

John MYHR, third party plaintiff, Respondent,

v.

Marlene L. DAHLGREN, third party defendant, Respondent.

No. C2–84–1028.

Court of Appeals of Minnesota.

Jan. 22, 1985.

Manly A. Zimmerman, Minneapolis, for appellants.

Mitchel H. Costley, Two Harbors, for Myhr.

Leonard A. Wilson, Jr., Cloquet, for United Farm Agencies, Inc., and Marlene L. Dahlgren.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

LESLIE, Judge.

The appellants brought this action to compel specific performance of a real estate contract. The trial court determined that there had been no meeting of the minds concerning the amount of the property to be sold, and denied the appellants' request. We affirm.

## FACTS

In September 1980 appellant Gary Smoliak and his wife purchased a parcel of land in Cook County, Minnesota adjacent to the property which is the subject of this lawsuit. At the time he purchased the land, Smoliak indicated to his real estate agent,

respondent Marlene Dahlgren, that he would also be interested in purchasing the adjoining land, which was owned by respondent John Myhr.

In May 1981 Myhr entered into a listing agreement with Dahlgren to sell a portion of the land which adjoined Smoliak's property. Myhr informed Dahlgren that he wished to sell 600 feet of shoreline property, and after the listing agreement was signed he took Dahlgren out to the property and pointed out the land he wished to sell.

Smoliak was still interested in purchasing the land, and in August 1981 Smoliak and Myhr signed a purchase agreement which described the land to be sold as follows:

"Government Lot 4, Section 26—Township 62 North—Range 3 East—Legal to be expanded."

Smoliak believed he was purchasing 600 feet of shoreline measured in a straight line from east to west, but Myhr had measured 600 feet along the shoreline in a meandering fashion, and only wished to sell that much land. No map was attached to the copies of the purchase agreement which Smoliak and Myhr received and signed.

Dahlgren attached a map of the property to a third copy of the purchase agreement which was forwarded to Smoliak's attorney. When the attorney examined the map in preparation for drawing up a Contract for Deed, he discovered that the 600 feet measured by Myhr in a meandering line only amounted to approximately 525 feet measured in a straight line from east to west.

Both parties refused to sign the Contract for Deed which described the land as only 525 feet, and Smoliak brought this action to compel Myhr to sell 600 feet of shoreline property measured in a straight line. Myhr submitted a counterclaim, requesting that the court compel Smoliak to purchase 600 feet measured in a meandering line.

The action was tried to the court, which concluded that there had been no meeting of the minds between Smoliak and Myhr concerning the exact land to be sold. Smoliak has appealed.

## ISSUES

1. Whether the trial court erroneously refused to order specific performance of the contract.

2. Whether respondent Myhr should be liable for allegedly false representations of real estate agent Dahlgren.

3. Whether the trial court's findings of fact contain errors which require reversal.

4. Whether the damages and costs awarded by the trial court should be sustained.

## ANALYSIS

### I.

### Specific performance

The trial court denied the parties' requests for specific performance based on its conclusion that there had been no meeting of the minds between the parties concerning the amount of land to be sold. This determination finds support in all of the testimony submitted by the parties, and the court's denial of equitable relief is supported by relevant caselaw.

In *Minneapolis Cablesystems v. City of Minneapolis,* 299 N.W.2d 121 (Minn.1980) our supreme court noted that "[a] contract requires a meeting of the minds concerning its essential elements." *Id.* at 122. With respect to the particularity with which property must be described in a contract to convey, the court in *Doyle v. Wohlrabe,* 243 Minn. 107, 66 N.W.2d 757 (1954) stated:

In passing upon the particularity with which the property must be described, it is to be borne in mind that a written contract for the conveyance of land, to satisfy the statute of frauds, need only provide that degree of certainty which is reasonably necessary to identify the parties, the land to be conveyed, and the terms and conditions of the promises made by the respective parties to each other.

*Id.* at 110, 66 N.W.2d at 761 (footnote omitted). The test for determining the requisite specificity was explained in *Miracle Construction Co. v. Miller,* 251 Minn. 320, 87 N.W.2d 665 (1958):

> The description of land which a written sales contract purports to convey satisfies the statute of frauds * * * if, in the light of the circumstances and conditions surrounding the parties with respect to the land during the negotiations * * * such description provides, when applied to the physical features of the surrounding terrain, a reasonably certain guide or means for identifying such land to the exclusion to all other lands. Since even the most specific and precise description may require some parol proof to complete the identification of the property, the test is—does the writing furnish a reasonably certain means of identification?

*Id.* at 323, 87 N.W.2d at 669 (footnotes omitted; emphasis in original).

■ In the present case the legal description of the land to be conveyed was not included in the purchase agreement. Rather, the agreement stated "legal to be expanded." Smoliak testified that he intended to purchase 600 feet of shoreline measured in a straight line, whereas Myhr testified that he intended to sell 600 feet measured in a meandering line. These facts support the trial court's determination that the contract was insufficient and could not be specifically enforced by either party. As stated in *Ortendahl v. Bergmann,* 343 N.W.2d 309 (Minn.Ct.App.1984):

> [E]quity denies specific performance "where to grant it would be to compel the defendant to perform a contract which he did not intend to make or which he would not have entered into had its true effect been understood."

*Id.* at 312, *quoting Damazo v. Neal,* 32 Md.App. 536, 543, 363 A.2d 252, 257 (1976).

## II.

### Agency relationship

Smoliak argues that the agency relationship between Myhr and Dahlgren estops Myhr from denying Dahlgren's actual or apparent authority. The trial court did not address this issue, nor does Myhr contest the authority which Dahlgren had to make representations on his behalf concerning the land which was being sold. The parties have, however, contested the substance of the alleged representations by Dahlgren. Smoliak argues that Dahlgren led him to believe Myhr was selling 600 feet of shoreline measured in a straight line, and that Myhr should therefore be held to account for Dahlgren's alleged representations.

■ The trial court found that "[a]ll negotiations through defendant Dahlgren referred to sale and purchase of 600 feet of shoreline but no one discussed as to how this was to be measured." This finding is supported by Dahlgren's testimony that she never explained to Smoliak how the 600 feet of shoreline would be measured, since at no time prior to the signing of the purchase agreement had the method of measurement become important to him.

## III.

### Trial court's findings

Smoliak challenges three of the trial court's findings, claiming that they are incorrect and unsupported by the evidence. Finding of Fact No. 7 states:

> A purchase agreement was drawn by defendant Dahlgren and signed by the plaintiff on August 3, 1981, and by defendant Myhr on August 14, 1981 (Plaintiff's Exhibit 10). The description was incomplete and left to be "expanded," and no map was attached thereto. * * *

Smoliak argues that since a map was attached to the copy of the purchase agreement which was sent to his attorney, this finding is erroneous. The trial court, however, obviously meant that no map had been attached to the copies of the purchase agreement which were received by Smoliak and Myhr, since only those parties are referred to in the finding. This was later clarified in Finding of Fact No. 9:

Attorney Donald B. Davison was given the purchase agreement with a map now attached to give an opinion of title and prepare the contract for deed.

■ Finding of Fact No. 8, which Smoliak also challenges, provides in relevant part:

That at the time of the signing of said purchase agreement, defendant Myhr had no maps of said property, and such were not provided to the defendant Dahlgren until sometime after July of 1981 when plaintiff Myhr received such a map. * * *

This finding does indeed appear erroneous. First, the court refers to "plaintiff Myhr," although Myhr was a defendant. Perhaps most importantly, however, is the court's finding that at the time the purchase agreement was signed (August 14, 1981) Myhr had no maps of the property, and did not provide them to Dahlgren until after *July* of 1981 when he received them. This finding appears inconsistent, since if he received a map after July, 1981 he certainly could have had one on August 14, 1981.

Even though this finding is incorrect, however, the court's error is harmless. Whether or not Myhr had a map of the property in his possession does not alter the fact that Smoliak did not receive a copy and that the parties intended that different areas of land be conveyed.

■ Smoliak also challenges Finding of Fact No. 11, in which the court stated:

Defendant Myhr, upon seeing the footage in attorney Davison's contract for deed (525 feet), objected, as did plaintiff Smoliak. * * *

Smoliak argues that this finding is erroneous because he never objected to the term of 525 feet listed in the contract for deed. However, the entire basis for this action is Smoliak's demand for the sale of *600* feet of shoreline property measured in a straight line, or, in the alternative, for damages for the number of feet he does not receive. His claim that he never objected to the term of 525 feet in the contract for deed is therefore refuted by the very fact of this lawsuit.

## IV.

### Award of damages and costs

Smoliak finally argues that the trial court should have awarded damages against respondent Dahlgren and her realty company, United Farm Agencies, Inc. "depending on how much land was sold under the contract." This argument assumes that there was an enforceable contract for sale, and that the trial court should have ordered performance of the contract and conveyance of the 600 feet measured either in a straight line or a meandering line. Because the trial court properly denied enforcement of the contract, Smoliak's argument concerning damages need not be reached.

■ Respondents Dahlgren and United Farm also claim that the trial court improperly awarded attorneys fees to Smoliak and Myhr. The respondents, however, did not file a notice requesting review of this issue. Rule 106 of the Rules of Civil Appellate Procedure provides:

A respondent may obtain review of a judgment or order entered in the same action which may adversely affect him by filing a notice of review with the clerk of the appellate courts. The notice of review shall specify the judgment or order to be reviewed, shall be served and filed within 15 days after service of the notice of appeal, and shall contain proof of service.

This rule indicates that in order to obtain review of an additional issue a respondent must file the notice of review. We therefore decline to address the respondents' claim.

### DECISION

The trial court's order denying the appellant's claim for specific performance is affirmed.